**SUNSHINE MINING COMPANY, Plaintiff-Appellee,**

v.

**UNITED STEELWORKERS OF AMERICA, AFL–CIO, CLC and Local 5089, United Steelworkers of America, Defendants-Appellants.**

No. 85–4378.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 2, 1986.

Decided March 25, 1987.

As Amended Aug. 10, 1987.

---

Rudolph L. Milasich, Jr., Pittsburgh, Pa., for defendants-appellants.

James E. Ruyle, Portland, Or., for plaintiff-appellee.

Before BROWNING, Chief Judge, WRIGHT, Circuit Judge, and ORRICK,* District Judge.

ORRICK, Senior District Judge:

Appellants, United Steelworkers of America, AFL–CIO, and Local 5089, United Steelworkers of America (the "Union"), appeal from the judgment and order of the district court, which vacated portions of an arbitration award, closed the arbitration hearing, and denied the grievance filed on behalf of Russell Carlson by the Union against appellee, Sunshine Mining Company (the "Company"). For the reasons set forth below, we reverse the decision of the district court with instructions to remand the grievance to the arbitrator.

I

The controversy in issue involves the discharge of a miner, Russell Carlson, by the Company on April 19, 1984. Carlson worked at the Company for a total of seven years. In 1981, he received a head injury in a rock fall and was referred to a neurologist. The neurologist noted no signs of permanent psychological problems, although he recommended that Carlson engage in surface work for several months. Carlson eventually returned to underground mining in January 1982. Between February and October of 1983, Carlson accumulated a number of unexcused absences and was discharged. During the ensuing grievance, the Company agreed to reinstate Carlson on the condition that he attempt to improve his attitude toward his work.

Carlson returned to work, although certain problems persisted. First, Carlson was inclined to mutter obscenities about his supervisor and management officials; second, other workers believed Carlson to be "nervous," and harassed him by throwing firecrackers at him in the mine, and poking him in the darkened elevator as it descended into the mine.

On April 9, 1984, Carlson's supervisor instructed him to "raise the crib" at the 4,200 foot level of the mine before blasting. Carlson began cursing loudly. At the end of the shift, when the crew assembled next to the elevator, Carlson again shouted profanities at his supervisor, and continued this verbal abuse as the crew rode the

* Honorable William H. Orrick, Jr., Senior United States District Judge, Northern District of California, sitting by designation.

elevator out of the shaft. The supervisor testified that he had never seen such a strong and extended emotional reaction by a worker in the mine. Other crew members reported that Carlson appeared to be mentally unstable. Carlson himself could not remember the details of the incident, although he stated that he had "spells" or hallucinations after which he could not remember what he had said or done. Carlson had previously taken anti-convulsants as prescribed by the neurologist, but he was not taking any medication on the day in question.

The following day, Carlson received a notice of suspension prior to discharge. He was then terminated for insubordination. The Union filed a grievance on Carlson's behalf, and when the issue remained unsettled, it was referred to arbitration in accordance with Article XIV of the 1980 Collective Bargaining Agreement between the parties.[1]

The parties stipulated that the issue before the arbitrator was as follows: "Was the grievant discharged for just cause? If not, what is the appropriate remedy?" The relevant provision of the Collective Bargaining Agreement vested "the sole direction of the working forces, including * * the right to * * * discharge for cause" in the Company, subject to the other provisions of the agreement. Collective Bargaining Agreement, Art. XXVI, Control in Management.

A hearing was held on May 31, 1984, before Arbitrator Carlton J. Snow, at which evidence was presented and oral argument made. The parties elected to submit post-hearing briefs. The arbitrator officially closed the hearing on July 12, 1984. On August 13, 1984, the arbitrator issued the award. He concluded that there was a serious question concerning Carlson's mental stability at the time of the incident that led to his discharge. The arbitrator found that Carlson had engaged in insubordinate conduct, but reasoned that if he were mentally ill at the time, the illness, under certain circumstances, would preclude a finding of just cause for discharge.

Recognizing the uniqueness of the situation, the arbitrator framed a unique award. The arbitrator found that the evidence supported "a conclusion that the grievant's mental instability may have been a significant factor" in his discharge, but that there was insufficient evidence to determine whether Carlson's mental instability was temporary, or whether it rendered him incapable of continued performance of his duties. Stating that a final determination as to whether Carlson's discharge had been for cause could be made only if expert evidence concerning his psychological condition became part of the record, the arbitrator ordered the parties to select a psychiatrist to examine Carlson. The psychiatrist was to submit his or her findings concerning Carlson's mental condition at the time of the incident, and at the present time. If the psychiatrist concluded that Carlson suffered from no mental illness, the discharge was to be sustained. If the psychiatrist concluded that Carlson was mentally ill at the time of the incident, and his prognosis for recovery would preclude underground mining work, the discharge would similarly be sustained. However, if the psychiatrist determined that Carlson was mentally ill on April 9, but had recovered sufficiently to work underground, he was to be reinstated without back pay but with seniority. The arbitrator stated that he would retain jurisdiction in the matter for sixty days following issuance of a psychiatric report, as authorized by the parties.

1. The relevant portion of Article XIV of the Collective Bargaining Agreement states:

Any question or dispute concerning compliance by the Company with, or interpretation or application of this Agreement, memoranda or supplemental agreements concerning wages, hours and other terms and conditions of employment, shall be treated as a claimed grievance in the sequence outlined as grievance procedure until settled. Should an agreed settlement be lacking at the final stage of the grievance procedure, said claimed grievance may then be referred by the grievant's representative to arbitration. The Arbitrator's decisions made within the scope of the submission and authority of the Arbitrator shall be final and binding on all parties.

The Company requested that the arbitrator reconsider his decision, arguing that he had no authority to reopen the record for post-hearing evidence, or to require the Company to pay part of the costs of the psychiatric examination. This request was denied. On October 11, 1984, the Company requested a stay of implementation of the award, stating that if the Union undertook to have Carlson examined, it would not be responsible for any portion of the fee, pending the outcome of litigation it intended to file. The Company then filed this action in the district court to vacate the arbitration award. The Union answered and filed a counterclaim to compel enforcement of the award.

After a hearing on cross-motions for summary judgment, the district court entered a judgment in favor of the Company. The court ordered the record closed and the grievance denied on the basis of the arbitrator's finding of insubordination. In its contemporaneously filed memorandum opinion and order, the district court noted that "[a]n arbitrator may hold the record open for the inclusion of additional evidence." Nonetheless, it found that the parties had been denied due process by the arbitrator's conditioning of his final determination, after closing the record, on a conclusion to be reached by a psychiatrist with respect to Carlson's mental illness. Furthermore, the district court found that the arbitrator acted beyond his authority in ordering the psychiatric examination, which it deemed to be an improper delegation of the arbitrator's fact-finding function.

## II

■ The question before this court is whether the district court properly vacated portions of the arbitral award, closed the record, and denied the grievance when it granted summary judgment. A district court's grant of summary judgment vacating an arbitration award is reviewed *de novo. New Meiji Market v. United Food & Commercial Workers Local #905,* 789 F.2d 1334, 1335 (9th Cir.1986).

■ The scope of review of an arbitrator's decision is extremely narrow. *Ed-ward Hines Lumber Co. v. Lumber & Sawmill Workers Local No. 2588,* 764 F.2d 631, 634 (9th Cir.1985). It is well established that the courts must not reexamine the merits of an arbitral award, because to do so would undermine the federal policy of settling labor disputes by arbitration. *United Steelworkers of America v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960). Because arbitration is an *alternative* to the judicial resolution of disputes, this extremely low standard of review is necessary to prevent the "judicialization" of the arbitration process. *E.I. DuPont de Nemours & Co. v. Grasselli Employees Independent Association of East Chicago, Inc.,* 790 F.2d 611, 614 (7th Cir.1986).

■ As long as the arbitrator's award "draws its essence" from the collective bargaining agreement, it must be enforced. *Enterprise Wheel,* 363 U.S. at 597, 80 S.Ct. at 1361; *Broadway Cab Cooperative, Inc. v. Teamsters & Chauffeurs Local Union No. 281,* 710 F.2d 1379, 1382 (9th Cir.1983). An award is said to "draw its essence" from the contract if it is based on the contractual language and the parties' conduct. *Howard P. Foley Co. v. International Brotherhood of Electrical Workers, Local 639,* 789 F.2d 1421, 1422–1423 (9th Cir.1986). Only if the arbitrator dispenses "his own brand of industrial justice" should the award be vacated. *Enterprise Wheel,* 363 U.S. at 597, 80 S.Ct. at 1361. The Supreme Court recently reaffirmed this deferential standard of review in *W.R. Grace & Co. v. Local Union 759,* 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983).

When the parties include an arbitration clause in their collective-bargaining agreement, they choose to have disputes concerning constructions of the contract resolved by an arbitrator. Unless the arbitral decision does not "dra[w] its essence from the collective bargaining agreement," a court is bound to enforce the award and is not entitled to review the merits of the contract dispute. *This remains so even when the basis for the*

*arbitrator's decision may be ambiguous.*

(Citation omitted; emphasis added.)

▮ Applying these principles to this case, it is clear that consideration of Carlson's mental condition was well within the arbitrator's authority.[2] The scope of the arbitrator's authority is limited to the issue submitted to him by the parties. *Mobil Oil Corp. v. Independent Oil Workers Union,* 679 F.2d 299, 302 (3d Cir.1982). The issue submitted to the arbitrator in this case was whether Carlson's discharge was for "just cause." The arbitrator interpreted "cause" to encompass a mental fault element, *i.e.,* an insubordinate but mentally ill employee would lack the fault necessary to support a finding of just cause. An award that considers a "just-cause" provision to include an element of fault is a plausible interpretation of the contractual language, to which the courts must defer. *E.I. DuPont de Nemours,* 790 F.2d at 614.

> This notion of fault analysis as part of a just cause determination is not a novel concept based on the personal whims of a single arbitrator; the same concept has been applied by several other arbitrators.

*Id.* at 614. *See also Mobil Oil Corp.,* 679 F.2d at 303.

The Company argues that *Butterkrust Bakeries v. Bakery, etc., Workers International Union, Local 361,* 726 F.2d 698 (11th Cir.1984), compels a different result. In *Butterkrust,* the arbitrator first found just cause for dismissal, and then attempted to condition reinstatement upon completion of a Dale Carnegie class. The court there held that once the arbitrator found the existence of just cause for dismissal, his authority over the parties in the dispute ceased. *Id.* at 700. *Butterkrust* is inapposite to this case because the arbitrator never found just cause for discharge. He found that Carlson's conduct constituted insubordination, but he did not determine that such insubordination constituted cause of discharge.[3] Instead, the award concluded that the just-cause-for-discharge issue could only be resolved if expert psychological evidence became part of the record.

▮ Nonetheless, structuring the award to make it conditional on the results of a future psychiatric examination rendered it a partial or interim award, even though it was not so designated. The authority of arbitrators to issue interim awards has been upheld. For example, in *Sportswear, etc., Garment Workers Union, Local 246 v. Evans Manufacturing Co.,* 318 F.2d 528 (3d Cir.1963), the court upheld the arbitrator's authority to issue a preliminary award that directed the union be permitted to examine the employer's books, before arbitral resolution of all facets of the submitted issue. Stating that it had "no doubt of the propriety of the order under review, as one, on the basis of the record, within the authority of the Arbitrator," the court compared the decision of the Supreme Court in *Enterprise Wheel,* 363 U.S. 593, 80 S.Ct. 1358, which held that an award need not be set aside for incompleteness and ordered the award returned to arbitration for a definite determination. *Evans Manufacturing Co.,* 318 F.2d at 530.[4]

2. The Company makes an argument that the issue of Carlson's mental condition was not raised by appellants at the hearing. The issue was first raised in grievance proceedings prior to arbitration; and both sides argued the issue in the briefs submitted to the arbitrator. Carlson and other witnesses also testified at the hearing regarding Carlson's mental condition. Thus, the Company's assertion is completely without merit.

3. *International Association of Machinists v. San Diego Marine Construction Corp.,* 620 F.2d 736, 738 (9th Cir.1980), upheld an arbitration award that found even though the grievant was "insubordinate" there was not "just cause" to discharge him.

4. "Ninth Circuit precedent supports our jurisdiction to review such an award. As *Aerojet-General Corp. v. American Arbitration Ass'n,* 478 F.2d 248 (9th Cir.1973), demonstrates, we have not precluded review of all nonfinal arbitrator's awards. The present case falls in the category of exceptional cases in which the panel must decide the merits of the appeal in order to determine the interim nature of the arbitrator's award. Neither *Kemner v. District Council of Painting & Allied Trades No. 36,* 768 F.2d 1115 (9th Cir.1985), nor *Aerojet-General* preclude review of such a case."

■ Inasmuch as the psychiatric examination ordered by the arbitrator in this case was never conducted, the instant award is incomplete. It is firmly established that the courts may resubmit an existing arbitration award to the original arbitrator for interpretation or amplification. See *Locals 2222, 2320–2327, International Brotherhood of Electrical Workers v. New England Telephone & Telegraph Co.*, 628 F.2d 644, 647 & n. 4 (1st Cir.1980), and cases cited therein. The district court, therefore, erred in substituting its interpretation for that of the arbitrator. The case must be remanded to arbitration for a final and complete determination of the issue submitted.

### III

A more difficult question is presented by the arbitrator's order that Carlson submit to a psychiatric examination to be paid for by the parties. The results of this examination were to be used to determine Carlson's reinstatement or discharge. The district court found that this order exceeded the bounds of the arbitrator's authority on three separate grounds. Each will be discussed in turn.

■■ First, the arbitrator's order did not constitute a violation of due process by depriving the parties of an opportunity to cross-examine the psychiatrist on the results of the psychiatric examination. Labor arbitrations do not provide the same procedural protections as do judicial proceedings. As the district court recognized, an arbitrator "need only grant the parties a fundamentally fair hearing." *Bell Aerospace Co. Division of Textron, Inc. v. Local 516, UAW*, 500 F.2d 921, 923 (2d Cir. 1974). A hearing is fundamentally fair if it meets "the minimal requirements of fairness"—adequate notice, a hearing on the evidence, and an impartial decision by the arbitrator. *Ficek v. Southern Pacific Co.*, 338 F.2d 655, 657 (9th Cir.1964), *cert. denied*, 380 U.S. 988, 85 S.Ct. 1362, 14 L.Ed.2d 280 (1965).

■ Arbitrators may admit and rely on evidence inadmissible under the Federal Rules of Evidence. *See, e.g., Bell Aero-*

*space Co.*, 500 F.2d at 923. Similarly, a party does not have an absolute right to cross-examination. *See, e.g., Hoteles Condado Beach, La Concha & Convention Center v. Union de Tronquistas Local 901*, 763 F.2d 34, 40 (1st Cir.1985). The arbitrator must, however, give each of the parties to the dispute an adequate opportunity to present its evidence and arguments. *Id.* at 39. In this case, the issue of Carlson's mental condition was first raised at the prearbitration grievance proceedings, and both parties had an adequate opportunity to present evidence and argue the question at the hearing and in the posthearing briefs. The arbitrator's ordering of a psychiatric examination, therefore, cannot be said to render the arbitration fundamentally unfair.

■ The district court also considered the arbitrator's order to be an improper delegation of decision-making authority to the psychiatrist. It is true that the arbitrator's duty is a personal one that may not be delegated. *National Bulk Carriers, Inc. v. Princess Management Co.*, 597 F.2d 819, 824 (2d Cir.1979). Nonetheless, the nature of some cases makes the use of expert testimony helpful. *See* F. Elkouri, *How Arbitration Works*, 334–39 (4th ed. 1985) (hereinafter cited as *"How Arbitration Works"*).

■ Simply requesting production of evidence that the arbitrator believes germane or necessary to resolution of the issue submitted is not an improper delegation, as long as the arbitrator carefully evaluates and weighs that evidence himself. *National Bulk Carriers*, 597 F.2d at 824. On remand, the arbitrator must determine the weight, relevancy, and authenticity of any evidence before him, including expert medical testimony.

■ Finally, we do not find the ordering of a psychiatric examination to be beyond the arbitrator's authority because he had already closed the record. It is common practice in arbitration proceedings for arbitrators to request the production of evidence if there is a reasonable basis to believe that it is germane to the case. *See*

*How Arbitration Works, supra,* at 309. Furthermore, there are exceptions to the ordinary rule that no new evidence is to be presented after the hearing. *Id.* at 319. In particular, *Courier-Citizen v. Boston Electrotypers Union No. 11,* 702 F.2d 273, 279 (1st Cir.1983), upheld the arbitrator's power to *sua sponte* reopen an award, even absent specific authority to do so:

> While it may be prudent on some occasions for an arbitrator to obtain such an order [of authorization] before reopening an award, *see* F. Elkouri & E. Elkouri, *How Arbitration Works* 240–241 n. 240 (3d ed. 1973), the Company has failed to cite any recent judicial decision vacating a supplementary award in a case where, as here, the arbitrator had sua sponte reopened an incomplete award in appropriate circumstances.

Because the conditional nature of the award rendered it incomplete, this is an appropriate case in which the arbitrator should exercise his authority to reopen the award to supplement the record. On remand, the arbitrator should reopen the award, request whatever additional expert psychiatric evidence he deems necessary to the final resolution of the issue submitted, and then carefully evaluate and weigh that evidence before arriving at a final and complete award.

■■■ The only question remaining is whether the arbitrator has the authority to order that the psychiatric examination be paid for by both parties. Article XIV of the collective bargaining agreement provides that "[t]he expense of the Arbitrator shall be paid half by the Company and half by the Union."[5] The arbitrator concluded that psychiatric evidence was a prerequisite to his resolution of the issue submitted for arbitration. It was, therefore, a plausible interpretation of the contractual language to conclude that the psychiatric examination he ordered was an essential part of the "expense of the Arbitrator" to be paid for by both parties. Nevertheless, on

remand, each side may want to provide its own psychiatric evidence rather than share payment for one examination.

We reverse the decision of the district court with instructions to remand the case to the arbitrator for a complete and final determination of the grievance in accordance with the views expressed in this opinion.

---

5. Although it is not binding, Rule 44 of the American Arbitration Association provides that "the expenses of any witnesses or the costs of any proofs produced at the direct request of the Arbitrator, shall be borne equally by the parties unless they agree otherwise, or unless the Arbitrator in the award assesses such expenses or any part thereof against any specified party or parties." *See* F. Elkouri and E. Elkouri, *How Arbitration Works,* 309 n. 64 (4th ed. 1985).