**UNION SWITCH & SIGNAL DIVISION AMERICAN STANDARD INC.**

v.

**UNITED ELECTRICAL, RADIO AND MACHINE WORKERS OF AMERICA, LOCAL 610, Appellant.**

**No. 89–3527.**

United States Court of Appeals, Third Circuit.

Argued Dec. 14, 1989.

Decided March 27, 1990.

Order Denying Rehearing and Rehearing In Banc April 23, 1990.

William Bevan, III, Robert F. Prorok (argued), Reed, Smith, Shaw & McClay, Pittsburgh, Pa., for appellee.

Michael Louik, Janice Griffith O'Reilly (argued), Berger, Kapetan, Malakoff & Meyers, Pittsburgh, Pa., for appellant.

Before STAPLETON, GREENBERG and GARTH, Circuit Judges.

## OPINION OF THE COURT

STAPLETON, Circuit Judge:

This case presents important issues concerning the proper role of the federal courts in the not uncommon situation where a labor arbitrator sustains a grievance, orders make whole relief, directs the parties to negotiate concerning that relief, and "retains jurisdiction" to later resolve any disputed issues regarding the remedy. After such determinations by the arbitrator in this case, the parties repaired to the district court which ultimately entered an order enforcing the "award." Remedial issues remained unresolved, however, and the United Electrical, Radio and Machine Workers of America, Local 610 ("Union"), filed a post-judgment motion styled a "Motion for Remand," which sought an order returning a dispute concerning the remedial issues to the same arbitrator who had established liability. This appeal was taken from a denial of that motion.

We first must satisfy ourselves regarding the jurisdiction of the district court to enter the order here under review. If we determine that it did have jurisdiction, we must decide whether the district court abused its discretion in denying relief.

### I.

This dispute arises from an arbitration of a labor grievance concerning employee terminations, conducted pursuant to a collective bargaining agreement between the Union and the appellee, Union Switch & Signal Division, American Standard, Inc. ("Company"). The arbitrator, Shyam Das, was selected through a complex procedure set forth in the collective bargaining agreement. In accordance with the terms of the collective bargaining agreement and the grievance giving rise to the arbitration, the parties submitted both liability and relief issues to Arbitrator Das. After conducting hearings, he issued an opinion and award, finding that the terminations in question violated the collective bargaining agreement. On the question of damages, Das ruled that

> [a]dversely affected employees are to be retroactively reinstated, at least for such period as they otherwise were entitled to continued employment consistent with this decision, and are to be made whole. I retain jurisdiction to make final rulings on any remedial disputes that the parties are unable to resolve after full discussion.

App. at 105.

At this point, the Company chose to file a complaint in the district court, seeking to have the arbitrator's award vacated. The Union counterclaimed for enforcement of the award. The district court referred the case to a magistrate for pretrial proceedings, and following cross-motions for summary judgment, the magistrate filed a report and recommendation that summary judgment should be granted in favor of the Union. The Company did not file any objections to this report, and on May 23, 1988,

the district court, by memorandum order, adopted the magistrate's report as the opinion of the court. No appeal from this order was taken. These proceedings will hereafter be referred to as "the original action."

The Union and Company then engaged in negotiations aimed at calculating the make whole relief called for in Arbitrator Das' opinion. However, the parties were unable to reach agreement. The Company on at least two occasions requested that the Union provide specific information arguably relevant to calculating offsets and determining efforts to mitigate, but the Union refused to comply with these requests, contending that they were overbroad and burdensome. The parties were also apparently unable to agree on whether the employees are entitled to interest on back pay due. The merits of the parties' positions in these disputes are not relevant here.

As a result of this inability to reach agreement, the Union indicated that the dispute should be resubmitted to Arbitrator Das. The Company refused, arguing that the dispute as to calculation of make whole relief constituted a separate grievance, and that Arbitrator Das' jurisdiction ended when he issued his opinion and award, despite his attempt to "retain jurisdiction." The Company did offer to have the dispute resolved by a new arbitrator, selected by the procedure set forth in the collective bargaining agreement. Instead, on June 15, 1989, the Union filed a pleading in district court, bearing the same caption as the original action, entitled "Union's Motion to Remand to Arbitrator Shyam Das." On June 30, without briefing or argument, the district court denied this motion without explanation. This is the order before us on appeal.

## II.

■ The first question to be resolved is whether the existence of a final award of an arbitrator is a prerequisite to federal district court jurisdiction under § 301 of the Labor–Management Relations Act, 29 U.S.C. § 185, in the same sense that a "final" district court judgment is a prerequisite to our appellate jurisdiction under 28 U.S.C. § 1291. If it is, then the district court did not have jurisdiction over the Company's original attempt to vacate the arbitration award, the corresponding application for enforcement, or the "post-judgment" motion, and we must direct that the district court's order on that motion be vacated. However, if there is only a prudential rule against a district court's reviewing an arbitration award that fails to resolve all issues presented in the arbitration proceeding, we have no choice but to treat that unappealed judgment as valid and proceed to address the Union's "Motion to Remand."

There can be no doubt that the district court committed serious error when it entertained the original cross-applications to vacate or enforce, error that would have required reversal of the court's judgment had there been an appeal. In entertaining the original action, the district court acted contrary to the consistent teachings of this court and, so far as we are aware, every other Court of Appeals that has considered a similar issue.

In *Public Service Electric & Gas Co. v. System Council U–2*, 703 F.2d 68 (3d Cir. 1983), for example, an arbitration panel had determined that the employer violated the collective bargaining agreement, but "instructed the parties to schedule a hearing on remedies when and if they determined such a hearing necessary." *Id.* at 69. Instead of proceeding with the arbitration, the company went to district court and obtained an order vacating the award. On appeal, this court held that the district court should not have entertained a lawsuit until the arbitration was completed:

The present arbitration decision partakes of all the attributes of an interim order. Review of the decision at this stage would disrupt and delay the arbitration process and could result in piecemeal litigation. If this court should reverse the district court's determination and uphold the panel's liability determination and the parties did not thereafter agree upon a remedy, the panel would be required to impose one. The company could then repetition the district court to review

that remedy. We see no legitimate reason for allowing such piecemeal litigation.

*Id.* at 70. Accordingly, the district court's order was reversed with directions to dismiss the company's petition. *Id.*

A similar result was recently reached by the Ninth Circuit in *Millmen Local 550 v. Wells Exterior Trim*, 828 F.2d 1373 (9th Cir.1987). That case involved the arbitration of a grievance presenting two questions: "Whether the Employer violated [the collective bargaining agreement], and if so, what remedy." *Id.* at 1374. The arbitrator answered the first question in the affirmative, but "remanded" the question of remedy to the parties, "retaining jurisdiction in the event that the parties [could not] agree upon such remedy." *Id.* at 1374–75. When the union petitioned the district court to confirm the arbitrator, the employer moved to dismiss "for lack of a final award." The district court confirmed the award, but on appeal the Ninth Circuit, relying in part on *System Council U–2*, held that judicial review of incomplete arbitration awards is inappropriate in all but the "most extreme" situations. *Id.* at 1375 & 1377.

> By analogy to the "final judgment" rule of [28 U.S.C.] section 1291, an arbitration award that postpones the determination of a remedy should not constitute a "final and binding award" reviewable under section 301.

*Id.* at 1376. Accordingly, that court also reversed and remanded with directions to dismiss.

For the sake of simplicity we will hereafter refer to the teachings of *System Council U–2*, *Millmen* and similar cases as the "complete arbitration" rule. The events that have followed the district court's failure in the original action to apply the complete arbitration rule provide a vivid illustration of the pitfalls it exists to prevent. If the district court had dismissed the Company's original petition to vacate the arbitrator's determination of liability as untimely, and the parties were still unable to agree upon a remedy, the arbitration would have continued through to a determination of the appropriate make whole relief and only then, if at all, would the dispute have been presented in the district court. If that had occurred, however, the district court would be in a position to resolve *all* of the issues presented by this nexus of operative facts. Instead, this case has occupied a federal magistrate, a federal district court judge, and now a panel of the Court of Appeals, and even now we are not in a position to resolve the entire dispute and put an end to this controversy. This is, indeed, precisely the type of "fragmented litigation" the district court should have been vigilant to avoid.

The large number of cases presenting arbitration awards that defer determination of the remedy indicates that this is a common practice among arbitrators. *See, e.g., Sunshine Mining Co. v. United Steelworkers*, 823 F.2d 1289 (9th Cir.1987); *Hughes Aircraft v. Elec. & Space Tech.*, 822 F.2d 823 (9th Cir.1987); *Locals 2222, 2320, 2327, etc. v. New England Telephone and Telegraph Co.*, 628 F.2d 644 (1st Cir. 1980); *Hart v. Overseas National Airways, Inc.*, 541 F.2d 386 (3d Cir.1976); and the cases discussed above. In principle, there is nothing wrong with this practice. It is entirely reasonable for an arbitrator to "call time out" during an arbitration in the hope that a partial resolution will inspire the parties to work out their remaining differences on their own, thereby avoiding the time and expense of additional arbitration. But we must take care to ensure that parties do not use these "time outs" as an opportunity to rush to court, either to preserve what they have just won, or (more often) to forestall a process that is not turning out as they might have wished. If this is allowed, the arbitrator's time will only be spared, if at all, at the great expense of vastly prolonged and unnecessary litigation, which is of course precisely what arbitration exists to avoid.

Thus, if this were a direct appeal from the judgment in the original action, the appropriate disposition would be clear: a remand with instructions to vacate the judgment and dismiss the case. In the context of such a direct appeal the issue of whether the complete arbitration rule is a

rule of jurisdiction or a prudential rule is unimportant, since the issue for determination on appeal is the same however one may characterize that rule. As we have earlier pointed out, however, the distinction is important in the present context. If this doctrine is properly characterized as a prudential rule, we must accept the outstanding judgment and determine whether the district court erred in refusing to remand the remedial issues to Arbitrator Das;[1] on the other hand, if it is a rule of jurisdiction, the district court lacked jurisdiction over the original proceedings, as well as the Union's post-judgment motion, and we would have no occasion to address the merits of that motion.

The Company insists that the complete arbitration rule, like the final judgment rule, is one of jurisdiction. While we agree that the policies supporting both rules have a great deal in common, and in that sense are "analogous" as the *Millmen* court put it,[2] we cannot agree with the Company's ultimate conclusion. Federal courts are courts of limited jurisdiction and their jurisdiction is determined by looking to the federal statutes that confer jurisdiction. This court's jurisdiction under 28 U.S.C. § 1291 is limited to review of final judgments of the district court because that statute confers jurisdiction only with respect to "final judgments." A district court's jurisdiction under § 301 is not similarly limited, however. No reference to "final awards" or

any similar concept is to be found there and we believe this is the short and complete answer to the Company's contention. Once Congress creates federal jurisdiction over a class of cases, we are powerless to remove that jurisdiction, although we may establish prudential doctrines restricting the exercise of jurisdiction.[3]

Section 301, in relevant part, confers jurisdiction on district courts to enforce "contracts between an employer and a labor organization representing employees in an industry affecting commerce." A district court exercises this jurisdiction not only when it enforces an award resolving an issue the employer and the union have contracted to arbitrate but also when it enters an order directing that the parties undertake an arbitration process they have contracted to follow. Indeed, it seems to us that the legion of cases that have compelled arbitration bear persuasive witness to the fact that a final award is not a prerequisite to the exercise by the district court of the jurisdiction conferred by Section 301.

Not surprisingly, the case law of this Circuit and others reflects a recognition that the complete arbitration rule, while a cardinal and salutary rule of judicial administration, is not a limitation on a district court's jurisdiction. As the Ninth Circuit in *Millmen* recognized, there are a number of cases where courts have reviewed incom-

1. The dissent characterizes our refusal to upset the outcome of the original action as based upon prudential considerations. Typescript at 7 & n. 2. In fact it is a necessary consequence of the failure to appeal the original order. The motion currently before us on appeal does not reopen the original action but is instead collateral to it; it is, in effect, as we shall conclude below, a motion to enforce the original judgment. As such, we can only disturb the validity of the original order if we conclude that the district court was *without power* to enter the order in the first instance. *See Lubben v. Selective Service System Local Bd. No. 27*, 453 F.2d 645, 649 (1st Cir.1972) ("A void judgment is to be distinguished from an erroneous one, in that the latter is subject only to direct attack.... While absence of subject matter jurisdiction may make a judgment void, such total want of jurisdiction must be distinguished from an error in the exercise of jurisdiction."); 11 Wright and Miller, *Federal Practice and Procedure* § 2862 at

198–99 ("A judgment is not void merely because it is erroneous. It is void only if the court that rendered it lacked jurisdiction of the subject matter, or of the parties, or if it acted in a manner inconsistent with due process of law.").

2. 828 F.2d at 1376.

3. The dissent disputes this proposition by alluding to the collateral appeal doctrine. Typescript at 4. Leaving aside that the collateral appeal doctrine grants rather than prohibits exercise of jurisdiction, the *Cohen* doctrine is not an exception to the final judgment rule of section 1291, but a judicial interpretation of that rule, defining a "small class" of interlocutory decisions that, while they do not actually terminate a litigation, "have a final and irreparable effect on the rights of the parties." *Cohen v. Beneficial Loan Corp.*, 337 U.S. 541, 545, 69 S.Ct. 1221, 1225, 93 L.Ed. 1528 (1949).

plete arbitration awards very similar to the one currently at hand.[4] 828 F.2d at 1375 & n. 1. Perhaps the most important of these is *Steelworkers v. Enterprise Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), in which the Supreme Court reviewed an arbitration award that called for reinstatement and back pay with certain deductions (including any amounts employees earned from other employment), but failed to specify the amounts to be deducted. The Court did not find the incompleteness of this award fatal to jurisdiction.

Nor did this Court find a lack of jurisdiction in *Hart v. Overseas National Airways, Inc.*, 541 F.2d 386 (3d Cir.1976), which involved an arbitration award very similar to the one presently at hand, calling for the employee to be "made whole for any and all wages, benefits and/or rights to which he is or would have been entitled had he not been wrongfully discharged." *Id.* at 389. After the union sued to enforce the award, the employer moved for summary judgment contending, *inter alia*, that the award "was ambiguous, vague and incomplete and was not a final award which could be enforced." *Id.* at 389. The district court granted summary judgment for the employer. We reversed, instructing the district court on remand to first determine whether the award on liability was enforceable:

> If the district court on remand affirms the award as to [the employer's] liability ... then the damage portion of the

award must be remanded to the referee for classification and additional findings....

*Id.* See also *Sunshine Mining Co. v. United Steelworkers*, 823 F.2d 1289 (9th Cir.1987). The exercise of jurisdiction in these cases can only be explained if the complete arbitration rule is prudential; otherwise, none of these courts would have had the authority to decide the cases. *Cf. Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 397, 102 S.Ct. 1127, 1134, 71 L.Ed.2d 234 (1982) (noting that on two occasions the Court had reviewed Title VII cases where the 90–day filing requirement had not been met: "If the timely-filing requirements were to limit the jurisdiction of the District Court ... the District Courts in [those cases] would have been without jurisdiction.... We did not so hold.").

We acknowledge that this court and others have at times referred to the complete arbitration rule in jurisdictional terms. Indeed, in *System Council U–2*, we framed the issue for decision as follows:

> We must determine whether the panel determination was final and binding within the meaning of 29 U.S.C. § 185. If it was not, the district court lacked subject matter jurisdiction to vacate it. *Truck Drivers Union v. Riss & Co.*, 372 U.S. 517, 520, 83 S.Ct. 789, 791, 9 L.Ed.2d 918 (1963).[5]

*System Council U–2* was a direct appeal, however, and its characterization of the

---

**4.** *Millmen* also recognized that there can, in "extreme cases," be exceptions to the rule. 828 F.2d at 1375 & 1377. Exceptions, of course, are only possible because courts have the power to hear such cases.

**5.** As we have noted, neither the words "final and binding" nor their equivalent are found in Section 301. 29 U.S.C. § 185. "Final and binding" are, however, words of art utilized in virtually every collective bargaining agreement to designate the last step in the arbitration process and declare that the product of that step will be legally binding on the parties. *See, e.g.,* 2 (Forms) *Williston on Contracts* § 1924(c) Form No. 21 (3 ed.1979) (arbitrator's decision "will be final and binding" on all parties to the collective bargaining agreement). This is the way that phrase was used in *Truck Drivers Union v. Riss & Co.*, 372 U.S. 517, 83 S.Ct. 789, 9 L.Ed.2d 918 (1963) (per curiam), which was cited in *System*

*Council U–2* for the proposition that a final and binding award is a prerequisite to jurisdiction. *Truck Drivers* concerned a dispute over whether the "Joint Area Cartage Committee's" ruling was "final and binding" under the collective bargaining agreement—that is, whether the parties agreed to be bound by that body's decision. The Supreme Court stated that "if it should be decided after trial that the grievance award involved here is not final and binding under the collective bargaining agreement, no action under § 301 to enforce it will lie." 372 U.S. at 520, 83 S.Ct. at 792. In other words, the case was essentially an attempt to enforce the arbitration clause of the collective bargaining agreement, with the crucial issue being whether that clause rendered the decision of the Committee "final and binding." The question the Court describes, then, is not one of jurisdiction, but one of the merits, that was to be determined at trial.

issue as jurisdictional or non-jurisdictional was not essential to resolution of the issue presented and was, accordingly, dicta.[6] For that reason, we conclude that *System Council U–2* is not a controlling precedent in this context.[7]

For these reasons, we conclude that the district court had jurisdiction in the original action, and that it had jurisdiction to entertain the Union's post-judgment motion. We are confident that this holding will not encourage district courts to entertain section 301 actions prior to an arbitration being complete in all respects. Rather, the opinions in this case should alert the bench and bar to the necessity for an arbitration to be complete before a section 301 action is entertained so that a premature action will be discouraged or, if brought, will be met with a motion to dismiss. In short, we believe the opinions in this case will have an educational function so that what happened here, an apparent nonrecognition of the finality problem, will not be repeated.[8]

### III.

Having determined that the district court had jurisdiction to entertain the Union's motion, we turn now to the merits of that motion. The starting point of our analysis must be the unusual procedural posture in which the dispute has been presented. As filed, the Union's motion was entitled "Motion to Remand" and did not specify the authority for its filing. While there is no district court opinion explaining the reason for denying the Union's motion, the Company in its brief suggests that the lack of legal basis for the motion was the primary justification for the district court's denial of the motion.

■■ The Company argues, persuasively, that the district court was not authorized to entertain the union's motion under either Fed.R.Civ.P. 59(e) or Fed.R.Civ.P. 60(b)(6). That motion cannot be characterized as a "Motion to Alter or Amend a Judgment" pursuant to Rule 59(e) since the union does not seek to change the terms of its judgment. Moreover, there is a 10 day time limit on Rule 59(e) motions, and the "Motion to Remand" was filed more than a year after the original order. Nor can it properly be characterized as a "Motion for Relief From Judgment" under Rule

---

6. The word "jurisdiction" is often used in connection with a number of different reasons why a court might not hear a case, not all of which are related to the statutory and constitutional authority of the courts. *See Martin v. Luther,* 689 F.2d 109, 114–16 (7th Cir.1982) ("jurisdiction" does not always refer to power and authority of court); *Shircliff v. Elliott,* 384 F.2d 947, 950 (6th Cir.1967) (same). We find some guidance on this question from the Supreme Court's opinion in *Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982). There, the Court was presented with the question of whether filing charges with the EEOC within 90 days is a juridictional prerequisite to a suit under Title VII of the Civil Rights Act of 1964. In concluding it was, the Court of Appeals had relied on several Supreme Court cases that referred to the time limit as "jurisdictional." *Id.* at 393, 102 S.Ct. at 1132. But the Supreme Court, reversing, had little trouble concluding that those references were not controlling: "Although our cases contain scattered references to the timely-filing requirement as jurisdictional, the legal character of the requirement was not at issue in those cases." *Id.* at 395, 102 S.Ct. at 1134.

7. Moreover *System Council U–2* would not be a controlling precedent even if it held that the

complete arbitration rule was jurisdictional. As we have seen, in *Hart v. Overseas National Airways, Inc.,* 541 F.2d 386 (3d Cir.1976), this court expressly instructed the district court to exercise its Section 301 jurisdiction in the absence of a final award. If these cases be viewed as conflicting, we would be required under the law of our Circuit to follow the earlier precedent. *See, e.g., O. Hommel Co. v. Ferro Corp.,* 659 F.2d 340, 354 (3d Cir.1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1711, 72 L.Ed.2d 134 (1982).

8. We fully appreciate Judge Garth's concern regarding certainty about when review is available. Clearly a responsible litigant ought not to be denied review by reason of having missed a deadline because of an ambiguous rule regarding when the right to review is available. But no such problem is presented by our holding here because nothing requires a party to an arbitration proceeding to seek review in a section 301 action before the arbitration is final in all respects. Thus, the situation is no different from those in which an early appeal is permitted under the collateral order doctrine. In those cases a litigant may but is not required to appeal before a judgment which is otherwise final is entered. *See Matter of Kilgus,* 811 F.2d 1112, 1116 (7th Cir.1987).

60(b)(6), for, although such motions have no time limit, this is obviously not an accurate description of what the Union is attempting to do. Far from seeking "relief" from the judgment, the Union is seeking an order that will effectively enforce the judgment. In fact, we believe this is the only way to accurately describe the motion.

■ In determining how to characterize the Union's motion, we are not constrained by how it is titled. "[T]he function of the motion, not the caption, dictates the Rule which applies." *Smith v. Evans*, 853 F.2d 155 (3d Cir.1988). We therefore look to the purpose the motion attempts to achieve. The Union's "Motion to Remand" can properly be characterized as Motion for Enforcement of the district court's award. It is an attempt by the Union to force the Company to give the employees the "make whole" relief provided by the arbitration award which the court found to be enforceable.

This court has recognized the propriety of motions to enforce a judgment previously entered by the court and has held that they may be made at any time after the entry of judgment. *Pittsburgh Terminal Corp. v. Baltimore & Ohio R.R.*, 824 F.2d 249, 252–53 (3d Cir.1987). In *Pittsburgh Terminal* we rejected the argument that a motion captioned "Motion to Enforce Judgment" was really a Rule 59(e) motion subject to the 10 day time limit:

> [W]e note that federal courts of appeals, including this one, have exercised jurisdiction over appeals from denials of motions for enforcement of judgment. Such a motion is not an appendage to clarify or reconsider the original judgment but a matter having independent significance because it relates to a development occurring after the entry of the original judgment. It is not a device to relitigate the original issue. Courts therefore have not applied a ten-day time limit to these motions, and we decline to do so now.

9. On these facts, we think it clear that the union could have filed a new suit under Section 301 to secure specific enforcement of the Company's agreement to arbitrate both aspects of this dispute in a single proceeding. To require the

*Id.* at 253 (citations omitted). Thus, we have not only countenanced such motions, but have also exercised jurisdiction over the denial of such motions.

## IV.

■ Finally, we turn to the issue of whether the district court abused its discretion in denying the union's motion to enforce its judgment. The facts relevant to this issue are simple and undisputed. The Company agreed in the collective bargaining agreement to arbitrate this kind of dispute. When this particular dispute arose, the Company, pursuant to the terms of the collective bargaining agreement and the grievance, agreed to submit it to an arbitrator to determine *both* whether there had been a violation of the collective bargaining agreement *and,* if so, what the remedy should be. After receiving adverse decisions from Arbitrator Das and the district court on the violation issue and on some of the remedial issues, the Company was willing to arbitrate the remaining issues but only before a new arbitrator. As a result, it breached its agreement to arbitrate both aspects of this dispute in a single proceeding. In this context, the Union asked the district court to hold the Company to its agreement,[9] but the court failed to do so without giving a reason.

There is a strong national policy favoring the resolution of disputes by arbitration. *See generally Steelworkers Trilogy: Steelworkers v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1409 (1960); *Steelworkers v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1403 (1960); *Steelworkers v. Enterprise Wheel & Car Corp., supra.* The Supreme Court has repeatedly stressed that arbitration is a particularly appropriate tool for preserving peace in the work place. *E.g., Schnieder Moving & Storage Co. v. Robbins*, 466 U.S. 364, 371–72, 104 S.Ct. 1844, 1848–49, 80 L.Ed.2d 366 (1984);

Union the institute new litigation, however, would elevate form over substance and undermine the strong national policy favoring the expeditious resolution of labor disputes through arbitration.

*Gateway Coal Co. v. United Mine Workers of America,* 414 U.S. 368, 378–79, 94 S.Ct. 629, 637–38, 38 L.Ed.2d 583 (1974). Accordingly, district courts have been directed when reading collective bargaining agreements to resolve all doubts and ambiguity in favor of arbitration. *E.g., AT & T Tech, Inc. v. Communications Workers,* 475 U.S. 643, 650, 106 S.Ct. 1415, 1419, 89 L.Ed.2d 648 (1986); *Warrior & Gulf,* 363 U.S. at 582–85 ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."). Moreover, § 301 represents a clear Congressional mandate that agreements to arbitrate labor disputes be enforced by the district courts. Against this background, we have no hesitancy in concluding that the district court could not properly decline without reason to enforce the Company's agreement to arbitrate all aspects of this dispute before Arbitrator Das.[10] While we do not always insist on an express articulation of the basis for a district court's decision, where, as here, a district court declines to enforce an agreement to arbitrate and there is no apparent reason for its failure to do so, we hold that its decision cannot be permitted to stand.

We can perceive no reason why the Company should not be held to its bargain. We are particularly unimpressed with the sole reason tendered by the Company—that the issues remaining between the parties should be the subject matter of a new grievance. There is no new arbitrable dispute; the grievance that went to arbitration before Arbitrator Das "requests that all employees improperly terminated be reinstated and *made whole for lost wages, seniority and benefits,*" App. at 76 (em-

phasis added). More importantly, we believe acceptance of the Company's argument would fly in the face of the strong policies to which we have just referred. Judge Campbell described these policies well in *Locals 2222, 2320–2327, etc. v. New England Telephone and Telegraph,* in answering a similar contention of an employer that disputes over interpretation of an arbitration award should properly be the subject of new arbitration:

> To require the Union to invoke the "time-consuming and burdensome grievance process again" in order that the parties might resolve the remnants of a dispute which has already once traveled that route would seriously undermine the chief policies underlying resort to those procedures in the first instance: the speedy, flexible and inexpensive resolution of labor disputes. "The purpose of arbitration is to resolve disputes, not to create new ones." The grievance arbitration procedures, "contracted for by the parties, were never intended to force a grievant into the role of a modern day Sisyphus," and in the circumstances presented we affirm the decision below not to require the Union to run the entire course again.

628 F.2d 644, 649 (1st Cir.1980) (citations omitted).

### V.

We will vacate the order of the district court denying the Union's motion. As in *Hart,* we will remand with instructions that an order be entered requiring that the remaining unresolved issues be arbitrated in the original proceeding before Arbitrator Das.

GARTH, Circuit Judge, dissenting:

The majority today holds that both the district courts and the Court of Appeals

---

10. Since the "touchstone of [arbitrability] analysis is still the language of the contract itself," *Lehigh Portland Cement Co. v. Cement, Lime, Gypsum, and Allied Workers, etc.,* 849 F.2d 820, 822 (3d Cir.1988), we review a refusal by the district court to compel arbitration under the same standards we apply in all cases of contract interpretation, remaining mindful of the strong presumption in favor of arbitration. *See AT &*

*T Tech, Inc.,* 475 U.S. at 651, 106 S.Ct. at 1419. As we have shown, both the arbitration clause and the grievance presented unambiguously authorize Arbitrator Das to rule on the remedial issues. Accordingly, the district court was no more at liberty to decline without reason to enforce this agreement to arbitrate than it would be to decline without reason to enforce any other valid contract.

have jurisdiction under § 301 of the National Labor Relations Act (29 U.S.C. § 185) to review non-final awards of arbitrators. (Maj. Op. at 611–12) It does so notwithstanding the clear statement by authorities, including a prior panel of this court,[1] which have expressly addressed this issue and held otherwise. This court has previously held:

> We must determine whether the [arbitration] panel determination was final and binding within the meaning of 29 U.S.C. § 185. *If it was not, the district court lacked subject matter jurisdiction to vacate it.*

*Public Service Electric & Gas Co. v. Systems Council U–2,* 703 F.2d 68, 69 (3d Cir.1983). (Emphasis added.)

The majority opinion seeks to distinguish *Systems Council U–2* by characterizing the jurisdictional rule found in it, and in *Millmen Local 550 v. Wells Exterior Trim,* 828 F.2d 1373 (9th Cir.1987), as "prudential" and not "jurisdictional" (Maj. Op. at 613–14) and then going on to hold that prudence dictates that we take jurisdiction despite the fact that the arbitrator's award here is not final. (Maj. Op. at 614).

I therefore dissent from the majority's judgment, which holds, contrary to *Systems Council U–2,* that we have jurisdiction to review Arbitrator Das's arbitration award—an award which decided only the company's liability but has yet to decide the remedy. Rather, I would dismiss the union's appeal and remand to the district court with the direction that it do so as well. Neither court, district or appellate, has jurisdiction to enforce or vacate the awards of an arbitrator that are not final, as is the case here.

**I.**

The majority's approach to this case is seriously flawed. First and foremost, this court has stated expressly and unequivocally that an arbitrator's award which resolves only the issue of liability, and as a consequence does not resolve the issue of remedy, is not final and binding and no jurisdiction is available in federal courts under § 301 to confirm or vacate such a determination. See *Systems Council U–2,* 703 F.2d at 70.

In so holding, this court specifically addressed the issue of jurisdiction, and found it wanting, stating:

> We hold that under the present circumstances the [arbitration] panel's determination of liability was not a final award within the meaning of 29 U.S.C. § 185. As such, the district court lacked jurisdiction to reach the merits of the determination.

*Systems Council U–2,* 703 F.2d at 70.

We went on to amplify our holding—a holding and not merely dicta, as the majority opinion characterizes it (Maj. Op. at 614), that:

> The present arbitration decision partakes of all the attributes of an interim order. Review of the decision at this stage would disrupt and delay the arbitration process and could result in piecemeal litigation. If this court should reverse the district court's determination and uphold the [arbitration] panel's liability determination and the parties did not thereafter agree upon a remedy, the [arbitration] panel would be required to impose one. The company could then repetition the district court to review that remedy. We

---

**1.** As this circuit's Internal Operating Procedure 8C ("Policy of Avoiding Intra–Circuit Conflict of Precedent") states:

> It is the tradition of this court that reported panel opinions are binding on subsequent panels. Thus, no subsequent panel overrules a published opinion of a previous panel. Court in banc consideration is required to overrule a published opinion of this court. To the extent that the majority deems the holding in *Public Service Electric & Gas Co. v. Systems Council U–2,* 703 F.2d 68, 69 (3d Cir.

1983) to be incorrect, the proper, and indeed the only, method to change that holding is by an *in banc* rehearing. Internal Operating Procedure 8B states that rehearing will not be ordered except:

> (1) Where consideration by the full court is necessary to secure or maintain uniformity of its decisions, or
>
> (2) where the proceeding involves a question of exceptional importance.

Both criteria are met here.

see no legitimate reason for allowing such piecemeal litigation.

*Id.*

It must be obvious that if the district court in *Systems Council U-2* had no jurisdiction, jurisdiction in our Court was similarly lacking. Accordingly, in this case, where the district court was admittedly without jurisdiction under the doctrine of *Systems Council U-2* (Maj. Op. at 611), when it entertained the union's action seeking to enforce the arbitrator's liability decision, our jurisdiction is lacking as well.

Nor is the majority's attempt to bolster its analysis by reliance on *Hart v. Overseas National Airways, Inc.*, 541 F.2d 386 (3d Cir.1976) a convincing exercise (Maj. Op. at 613 n. 4). *Hart* at no time addressed the jurisdictional issue that is at the heart of *Systems Council U-2's* holding. *Hart* did not address jurisdiction as an issue. Indeed, no such issue was ever briefed by the parties or heard by the court. The fact that a court decides a case, and resolves a dispute, does not necessarily provide authority for the proposition that jurisdiction was properly invoked; unless the court specifically addresses the issue of jurisdiction—which *Hart* did not. See, *e.g.*, *Norton v. Mathews*, 427 U.S. 524, 532, 96 S.Ct. 2771, 2775, 49 L.Ed.2d 672 (1976) ("Making the assumption, then, without deciding, that our jurisdiction in this cause is established, we affirm ..."); *Secretary of Navy v. Avrech*, 418 U.S. 676, 94 S.Ct. 3039, 41 L.Ed.2d 1033 (1974) (same); *United States v. Augenblick*, 393 U.S. 348, 89 S.Ct. 528, 21 L.Ed.2d 537 (1969) (same). Thus, the suggestion by the majority that *Systems Council U-2* is not binding on a subsequent panel of this court because it is at tension with *Hart*, is clearly wrong.

Secondly, the majority opinion, relying wholly on 28 U.S.C. § 1291 (Maj. Op. at 612-13), argues that because that statute confers jurisdiction only with respect to final judgments while § 301 is not similarly limited, "we may establish only prudential doctrines restricting the exercise of jurisdiction." The essence of this argument is that any jurisdictional grant not encompassed or found in the text of § 1291 must necessarily be prudential in nature. However this argument ignores the entire body of jurisprudence establishing jurisdiction in federal courts under the "collateral order" doctrine, a judicially crafted doctrine not found in § 1291, but certainly not prudential in nature; See *Cohen v. Beneficial Industries Corp.*, 337 U.S. 541, 69 S.Ct. 1221, 93 L.Ed. 1528 (1949) (and progeny); Wright & Miller, 15 Federal Practice & Procedure § 3911; 9 Moore's Federal Practice ¶ 110.10, 13[9]. To the extent that the collateral order doctrine is, as the majority classifies it, a judicial interpretation of the final order doctrine of § 1291 (Maj. Op. at 612-14), so too is § 301. See *Zosky v. Boyer*, 856 F.2d 554, 557 (3d Cir.1988). ("The leading case in this circuit analyzing arbitration orders under section 1291 is *Rogers v. Schering Corp.* [262 F.2d 180 (3rd Cir.1959)] where Judge Maris, writing for the in banc court, set forth the rule that an order requiring arbitration is appealable as final under 28 U.S.C. § 1291 ..."); *Gavlik Construction Co. v. Campbell Co.*, 526 F.2d 777, 782 (3d Cir.1975) (same).

Thirdly, in addition to having offended this court's Internal Operating Procedures by having ignored the express holding of *Systems Council U-2*, the majority opinion has also disregarded a cardinal principle of jurisdictional jurisprudence: that is, both the bench and the bar must know without qualification when an order may be appealed.

Nor is it an answer to this dilemma to state that review of incomplete arbitration awards will be sought infrequently. We need only refer to the very cases cited throughout the majority opinion to belie that proposition; *e.g. Systems Council U-2* (Maj. Op. at 610-12), *Millmen Local 550* (Maj. Op. at 611-12), and *Hart* (Maj. Op. at 611-12, 613-14). Where jurisdiction is uncertain, an "obscure-line" rule, a rule which creates only uncertainty, cannot serve the purposes of a "bright-line" rule.

Justice Scalia stated this principle well in *Budinich v. Becton Dickinson Co.*, 486 U.S. 196, 202-03, 108 S.Ct. 1717, 1722, 100 L.Ed.2d 178 (1988) when he wrote:

The time of appealability, having jurisdictional consequences, should above all be clear.... *Courts and litigants are best served by the bright-line rule,* which accords with traditional understanding, that a decision on the merits is a "final decision" for purposes of § 1291 whether or not there remains for adjudication a request for attorney's fees attributable to the case.

(Emphasis added.)

The problem inherent in failing to delineate the precise event giving rise to jurisdiction to review was previously encountered by this court in an analogous situation when we held that there were two different, mutually contradictory times to appeal a decision properly. In *Richerson v. Jones,* 551 F.2d 918 (3d Cir.1977), we held that an order requiring payment of monies was not final and could not be appealed until quantified to a specific amount. In *Delong v. Raymond Int'l, Inc.,* 622 F.2d 1135, 1138 n. 3 (3rd Cir.1980) we reached a contrary result and held that the time to file an appeal commenced after a decision on the merits, even if damages had not yet been awarded. These conflicting opinions, much as *Systems Council U–2* conflicts with the majority holding here, left the bench and bar in the untenable position of not knowing when an appeal had to be noticed. That dispute was not resolved until our *in banc* decision in *Croker v. Boeing Co. (Vertol Division),* 662 F.2d 975 (3rd Cir.1981) (in banc) which adopted the *Richerson* rule. True, the Supreme Court sometime later in *White v. New Hampshire,* 455 U.S. 445, 102 S.Ct. 1162, 71 L.Ed.2d 325 (1982) opted for a different rule, to which of course we now subscribe. See *Halderman v. Pennhurst State School & Hospital,* 673 F.2d 628, 635 (3rd Cir.1982). The point that I make, however, is that no responsible court should permit or encourage uncertainty as to when review is available. Yet, that is precisely what the majority has chosen to do here in the face of binding prior precedent.

Just as the Supreme Court in *Griggs v. Provident Consumer Discount Company,* 459 U.S. 56, 103 S.Ct. 400, 74 L.Ed.2d 225 (1982) and *Budinich v. Becton Dickinson Co.,* 486 U.S. 196, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988), has adopted a bright line rule as to the time when jurisdiction vests (because of the need for clear and unambiguous jurisprudence where jurisdiction is involved), so too we should seek consistency in this circuit's jurisprudence. That consistency with respect to jurisdiction can now only be achieved by an *in banc* decision of the Court.

The holding of the majority, even if it were not in direct conflict with *Systems Council U–2,* embarks down a path which does not provide the needed instruction to the bench and the bar. Rather, it allows for "jurisdiction" to be granted in some cases and denied in others, based upon whatever prudential factors a particular panel, hearing a particular case, may find attractive. If the majority's prudential rule controls, will every bifurcated arbitration award be immediately appealable? If so, how is the rule of *Systems Council U–2* to be squared with the rule in this case? Will litigants be compelled to comply with both rules thereby leading in some cases to fragmented and piecemeal appeals, a result disapproved by this court in *Systems Council U–2,* 703 F.2d at 69–70, and the Supreme Court in *United States v. Hollywood Motor Car Co.,* 458 U.S. 263, 265, 102 S.Ct. 3081, 3082, 73 L.Ed.2d 754 (1982)? Or will it lead, as I suggest it will, to multiple appeals in all cases similar to the instant proceeding, a result that can only impose onerous burdens onto reviewing courts? This is particularly so given that the majority has not specified the prudential factors it will consider in deciding if jurisdiction should be asserted before a final decision is rendered by the arbitrator.[2]

2. In departing from the teaching of *Systems Council U–2,* the majority relies on only one prudential fact. The factor that it identifies is that this appeal arises from a post-judgment motion entitled "Union's Motion to Remand to Arbitrator Shyam Das", and which the majority characterizes as a "motion to enforce." The motion to enforce was brought more than a year after the district court's order of May 23, 1988 granting summary judgment in the union's favor.

## II.

I have dissented from the majority opinion and judgment because I would dismiss the union's appeal rather than entertain it and reach the merits as the majority has done. I would also remand to the district court with directions that the district court vacate its order of May 23, 1988 and all subsequent orders in that the district court had no jurisdiction to act on a non-final order of arbitrator Das.[3]

My dissent is based on three grounds. First, the majority decision involves the very power of the federal courts—its jurisdiction—to enforce and then review arbitration decisions. Without doubt, this issue involves a question of exceptional importance. See IOP 8B(2). Second, the majority's decision has violated our longstanding policy to honor, and not conflict with, published precedent of the Court. See IOP 8B(1). (See n. 1) Third, the majority decision cannot help but engender confusion and uncertainty as to if, and when, enforcement and review of a bifurcated arbitrator's award is available. These transgressions by the majority call out for resolution by this court *in banc.*

## ON REHEARING AND REHEARING IN BANC

Before HIGGINBOTHAM, Chief Judge, and SLOVITER, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD and GARTH, Circuit Judges.

STAPLETON, Circuit Judge.

The petition for rehearing filed by appellee in the above-entitled case having been

I am at a loss to understand why the majority believes prudence indicates that it should decide such a case when it concedes that it would have declined to review the original order, as the district court itself should have declined jurisdiction. If anything, such an approach allows a jurisdictionally "imprudent" decision—the initial hearing of the case by the district court—to stand.

**3.** The majority opinion has misread my dissent (see Maj. Op. at n. 1). I do not, as the majority claims, characterize the majority's refusal to vacate the district court's original order as based upon "prudential" considerations (see *supra*, p. 609–10). What I have stated as the majority's holding, and what the majority itself has held, is

submitted to the judges who participated in the decision of this Court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing and a majority of the circuit judges of the circuit in regular active service not having voted for rehearing by the court in banc, the petition for rehearing is denied.

Judge Hutchinson would have granted rehearing.

Judge Cowen dissents from the denial of in banc rehearing for the reasons noted in Judge Garth's dissent to the panel opinion.

GARTH, Circuit Judge, dissenting from a denial of rehearing:

This appeal has called into question the jurisdiction of the federal courts to review a non-final award of an arbitrator under § 301 of the National Labor Relations Act. The majority of the panel whose decision Union Switch has petitioned to rehear, has held that we had "prudential" jurisdiction to review such an incomplete award. (At 614.) I dissented from the panel's judgment (*id.* at 616) because it was crystal clear to me that the majority, in holding that we had jurisdiction, had violated our own Internal Operating Procedure 8C which proscribes creating a conflict with prior precedent. Moreover, the panel had done so in an excruciatingly sensitive area of the law—an area involving a federal court's power to act—its jurisdiction.

that *this court's jurisdiction* on appeal is based upon prudential considerations—a vastly different matter, and one with which I disagree.

Under my analysis, the district court's order of May 23, 1988 was entered without the court's power to do so, and thus without jurisdiction in the traditional and classical sense. The majority opinion concedes (Maj. Op. at 610–11) that fact by stating that had there been an appeal from the original order, the district court's judgment would not have been upheld, and in "entertaining the original action, the district court acted contrary to the consistent teachings of this court and, so far as we are aware, every other Court of Appeals that has considered a similar issue." Thus, the premise of footnote 1 of the majority's opinion is without foundation.

I called to the attention of the majority of the panel our holding in *Public Service Electric & Gas Co. v. Systems Council U–2*, 703 F.2d 68 (3d Cir.1983)—a holding diametrically opposed to, and at odds with, the court's holding on this appeal. The circumstances of *Systems U–2* and the circumstances of this appeal are indistinguishable. Yet, in *Systems U–2*, our court, speaking through then Chief Judge Seitz, had held that a federal court lacked subject matter jurisdiction over an arbitrator's incomplete award—an award deciding only liability and not damages. That precise situation obtains in the present appeal. Yet, the majority of the panel, ignoring *Systems U–2*, had held that indeed, we have jurisdiction.

I urged in my panel dissent, as I urge here, that we should not play fast and loose with jurisdictional issues and that any difference in philosophy, thought or jurisprudence must be resolved by this court *in banc*. This court has constantly striven for jurisprudential integrity, and that integrity, in my opinion, should not be undermined or diluted at the whim of, or by the decisions of, less than a majority of the full court.

I adhere to my view that the decision in this appeal is a gross departure from our self-imposed discipline (IOP 8C)—a discipline to which this court adheres in order to preserve the integrity and value of our precedents and our jurisprudence. Because the panel majority has chosen to ignore that precept, I dissented at panel hearing, and in my dissent called for rehearing *in banc*. I did so in order that the full court could determine whether the holding of *Systems U–2* was still viable, or, whether the holding in this case is henceforth to be followed.

I recognize that I cannot vote for rehearing *in banc* because as a senior judge I am precluded from doing so. I can, however, vote for panel rehearing, and I do so for the same reasons that I expressed in my panel dissent. Obviously, therefore, if I was empowered by statute to do so, I would vote for rehearing before the full court. Because I am not so permitted, I limit my vote to a vote granting the petition for panel rehearing.