**COLUMBIA ALUMINUM CORPO-RATION, a Delaware Corporation, Plaintiff,**

v.

**UNITED STEELWORKERS OF AMERICA, LOCAL 8147, an Unincorporated Organization, Defendant.**

**No. CY–95–3098–AAM.**

United States District Court, E.D. Washington.

Oct. 19, 1995.

---

7. See SEIU, 60 F.3d at 1356.

Judd H. Lees, Josephine B. Vestal, and Betsy A. Gillaspy of Williams, Kastner & Gibbs, Bellevue, WA, for plaintiff.

Steven A. Crumb of Crumb & Casey, P.S., Spokane, WA, for defendant.

## ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

McDONALD, District Judge.

Before the Court are Plaintiff's and Defendant's Cross-motions for summary judgment, Ct.Rec. 5, 8. On hearing with oral argument, Josephine Vestal represented plaintiff and Steve Crumb appeared for defendant.

Plaintiff in this action is Columbia Aluminum Corporation ("Columbia Aluminum"), a unionized company in Goldendale that employed non-parties Jerry Hancock and Chuck Wellner. Defendant is the United Steelworkers of America Local 8147 ("Union"), the union for Hancock and Wellner.

On June 30, 1994, Columbia Aluminum discharged Hancock and suspended Wellner due to a fight that occurred June 28, 1994, on Columbia Aluminum premises.

Hancock timely grieved his discharge. The parties arbitrated the grievance before Gordon M. Byrholdt. On June 15, 1995, Byrholdt upheld the grievance and ordered Hancock reinstated with backpay.

On July 25, 1995, Columbia Aluminum filed suit here to vacate the arbitration award. The Union counterclaimed to enforce the arbitration award. Both parties moved for summary judgment. Upon consideration of the record and the papers and arguments presented by counsel, the Court enters the following order.

## A. FACTS

Each party filed a LR 56(a) statement of material facts in support of its motion; neither party filed a LR 56(b) statement challenging such facts. Accordingly, pursuant to LR 56(c), all of the parties' asserted facts are assumed to exist without controversy. They are as follows. (Citations following each fact reference *Plaintiff's, Defendant's,* or *Plaintiff's Supplemental* statement of facts, and the paragraph number of the asserted fact.)

*Parties' Agreement.* Columbia Aluminum and the Union were parties to a collective bargaining agreement ("Agreement") covering Columbia Aluminum's Goldendale, Washington location between August 1, 1987 and July 31, 1994. P3; D1. Article I of the Agreement states that "[i]t is the intent and purpose of the parties hereto to set forth herein the obligations of the parties to this Agreement covering ... conditions of employment." D2.

Article X, Section 1 of the Agreement states that employees may "grieve matters involving the interpretation and application of specific provisions of this Agreement." P6. Article X sets forth a five-step grievance procedure ending in binding arbitration. D3. Grievances *not* resolved in the first four steps of the procedure may be appealed to arbitration by the Union. D3.

Article XI, Section 5 of the Agreement states:

This Agreement constitutes a contract between the parties which shall be interpreted and applied by the parties and by the arbitrator in the same manner as any other contract. The function and purpose of the arbitrator is to determine disputed facts upon which the application of the Agreement depends. The arbitrator shall therefore not have authority, nor shall it consider its function to include, the decision of any issue not submitted or to so interpret or apply the Agreement as to change the intent of the parties as determined by generally accepted rules of contract construction. The arbitrator shall not give any decision which in practical or actual effect modifies, revises, detracts from or adds to any of the terms or provisions of this Agreement. Past practice of the parties in interpreting or applying terms of the Agreement can be relevant evidence but may not be so used so as to justify or result in what is in effect a modification (whether by addition or detraction) of the written terms of this Agreement.

P7; D4.

Article XIII, Section 2 of the Agreement states:

Nothing in this Agreement is intended, nor shall it be construed, as denying or in any manner limiting the right of the Company, in its judgment, to control and supervise all operations and direct all working forces, including, but not limited to, the right to select and hire, discharge for just cause, suspend, or discipline for just cause, classify, layoff, recall, promote, demote or transfer employees, or relieve them from duties, establish schedules, hours of work, shift assignment, establish and maintain work rules and terms and conditions of employment and make such additional rules and modifications thereof as may be reasonable and necessary, and to do any and all things necessary to manage, control and administer its operations efficiently and economically, except as may be otherwise expressly provided in this Agreement.

P4; D5 ("Company" being Columbia Aluminum).

Columbia Aluminum established a work rule against fighting, enacted on August 10, 1987 and effective on June 28, 1994 (the day of the fight). P5; D6. The rule provided that its violation was "so serious that, if correction is needed, it will be immediate and severe." P5; D6.

*Hancock and Wellner altercation.* The present dispute originated from a fight at Columbia Aluminum's Goldendale, Washington facility on June 28, 1994. D7. The fight took place between Jerry Hancock and Chuck Wellner, both employees of Columbia Aluminum at the time. P8; P11; D7.

On June 28, 1994, Wellner was seated in an area known as a pergola, a small non-work area where cell line workers can eat lunch and take breaks. P16. Hancock came to the

pergola, not to eat lunch, but in search of Wellner. P17.

Hancock came into the pergola and stood next to Wellner's chair. P19. Wellner stood up, and after a verbal exchange, told Hancock to "get out of my face." P20. Wellner touched Hancock with his elbow and Hancock "retaliated" by hitting Wellner twice in the face. P21. Wellner attempted to rise. P22. Hancock then slammed his knee into Wellner's face two more times, breaking Wellner's nose. P22.

Hancock testified that after the fight, he followed Wellner to the cell line office and attempted to persuade him not to say anything about the fight. PS2.

After the incident, both Wellner and Hancock were given Article XII suspensions. P25. Columbia Aluminum later terminated Hancock for his violation of the Plant Rule against fighting. P25; D8. Wellner was laid off for twelve 12–hour shifts, the equivalent of a one-month suspension. D8. Wellner did not make a timely effort to grieve his "30–day" suspension. D10.

*Hancock's grievance.* Hancock timely grieved his termination. P26; P27; D9. The Union filed the grievance on Hancock's behalf, alleging "the punishment that Hancock received was too severe. . . . Suspension would have been punishment enough." P26. The grievance requested relief of "returning Hancock to work." P26.

Hancock's grievance proceeded through the various steps called for by the Agreement. P27; D11. The grievance was denied by Columbia Aluminum on the basis that "fighting in the workplace is a most serious offense and is prohibited under Group II of the Company's rules." P28.

*Arbitration Decision.* When the parties could not resolve the grievance, the Union appealed it to arbitration before Gordon Miles Byrholdt. D11. A hearing was held on March 28, 1995, in The Dalles, Oregon. P29; D11. Arbitrator Byrholdt issued his decision on June 15, 1995. P30; D11.

Max Seyhanli was a witness at the arbitration hearing. D12; PS1. Seyhanli has been employed by Columbia Aluminum as a cell line operator and/or business leader manag-ing many steps of the disciplinary process. D12; PS1. Seyhanli was involved in the decision to discharge Hancock. PS2.

In response to Arbitrator Byrholdt's questioning, Seyhanli stated that fighting has not always led to discharge, even for the instigator of the fight. D13. Seyhanli acknowledged dealing with at least six cases involving fighting where a penalty less severe than discharge was imposed. D14. On the other hand, Seyhanli acknowledged two or three cases in the last five years where employees involved in fighting had been terminated. PS3.

Arbitrator Byrholdt determined that Hancock went to Wellner's pergola and that Wellner was seated when Hancock arrived. P31. Arbitrator Byrholdt further found that Hancock's purpose in seeking out Wellner was not to precipitate a fight but merely to discuss a work-related incident. P33. Arbitrator Byrholdt determined that a brief discussion between Wellner and Hancock "quickly became nasty and a fight ensued in which Mr. Wellner suffered all the injury." P32. Arbitrator Byrholdt found that Wellner stood up and gave Hancock a shove, although Hancock was the first to throw a punch. P35. Arbitrator Byrholdt also determined that Wellner provoked the fight by his verbal and physical conduct and that Hancock's response constituted self-defense and was reasonable under the circumstances. P34, 37.

Arbitrator Byrholdt found for the Union and upheld the grievance. D15. He ordered that Hancock be unconditionally reinstated to his former position with back pay and all benefits, including seniority, as though he had never been terminated. P37; D15.

The Arbitration Decision does not address any provisions of the Agreement, including the management's rights clause (Article XIII, Section 2) or restriction on the arbitrator's powers (Article XI, Section 5). P39.

Columbia Aluminum refused to abide by the arbitration decision, alleging that it does not draw its essence from the Agreement, that it is based on the arbitrator's own brand of industrial justice, and that it is contrary to

public policy against fighting in the workplace. D16.

## B. SUMMARY JUDGMENT STANDARD

■ A party is entitled to summary judgment where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). The party seeking summary judgment must show that no genuine issue of material fact exists by "pointing out" to the Court that there is an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325–26, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986); *SEC v. Seaboard Corp.,* 677 F.2d 1301, 1306 (9th Cir.1982) ("A material issue of fact is one that affects the outcome of the litigation and requires a trial to resolve the parties' differing versions of the truth."). The Court must construe all facts in favor of the non-moving party. *Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513–14.

■ The party opposing summary judgment must go beyond the pleadings to designate specific facts establishing a genuine issue for trial. *Celotex,* 477 U.S. at 323–24, 106 S.Ct. at 2553; *Claar v. Burlington Northern R. Co.,* 29 F.3d 499, 502 (9th Cir. 1994) (experts cannot rely on unsupported conclusions); *Marks v. United States,* 578 F.2d 261, 263 (9th Cir.1978) (genuine issues are not raised by mere conclusory allegations). The nonmoving party may do this by use of affidavits, depositions, answers to interrogatories and admissions. *Celotex,* 477 U.S. at 321–24, 106 S.Ct. at 2552–53. Summary judgment is required against a party who fails to make a showing sufficient to establish an essential element of a claim, even if there are genuine factual disputes regarding other elements of the claim. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. at 2552–53. There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2511.

In this case, the parties do not dispute facts underlying the Arbitration Decision; rather, the issue is whether the decision was within the Arbitrator's authority.

## C. ANALYSIS

Columbia Aluminum moves for vacation of the arbitration award. It contends that the Arbitration Decision did not draw its essence from the Agreement, because the Decision reinstated an employee who broke another's nose, while the Agreement grants the unilateral right to Columbia Aluminum to terminate for just cause "in its judgment" and to maintain work rules (including a prohibition against fighting). In the alternative, Columbia Aluminum argues that even if the Arbitration Decision draws its essence from the Agreement, the Decision is contrary to the public policy against fighting in the workplace. Finally, Columbia Aluminum contends that the portion of the Decision awarding backpay is beyond the scope of the Arbitrator's authority because the grievance merely requested suspension and reinstatement.

The Union disagrees and moves for enforcement of the arbitration award. The Union notes that judicial review of an arbitration award is limited. The Union contends that the Arbitrator's award draws its essence from the Agreement, because Arbitrator Byrholdt's award represents a plausible interpretation of both the contract and the parties' prior conduct: although Columbia Aluminum can discharge for just cause, Hancock acted in self-defense and fighting has not led to discharge in every previous instance; therefore Hancock was *not* discharged for just cause. Further, the Union disputes that Arbitrator Byrholdt's award was based on his own brand of industrial justice, arguing that the issue of just cause was submitted to the arbitrator for decision and that issue arises from the Agreement. Additionally, the Union contends that the Decision did not violate public policy, because although there is a general public policy condemning fighting in the workplace, the policy does not specifically prohibit the ruling of the arbitrator. According to the Union, the arbitrator's decision that Hancock acted in self-defense permitted the arbitrator to award reinstatement. Finally, the Union

argues that the relief awarded was within the broad discretion of Arbitrator Byrholdt.

### 1. The Arbitration Decision Drew Its Essence From the Agreement.

 Labor law anticipates that arbitrators, not district courts, rule on employee grievances:

The refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards. . . .

A mere ambiguity in the opinion accompanying an award, which permits an inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the award. Arbitrators have no obligation to the court to give their reasons for an award. . . .

The question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*Steelworkers v. Enterprise Corp.*, 363 U.S. 593, 596, 598, 599, 80 S.Ct. 1358, 1360, 1361, 1362, 4 L.Ed.2d 1424 (1960). Accordingly, judicial review of arbitration decisions are limited in scope:

The arbitrator's factual determinations and legal conclusions generally receive deferential review as long as they derive their essence from the [collective bargaining agreement]. If, on its face, the award represents a plausible interpretation of the contract, judicial inquiry ceases and the award must be enforced. This remains so even if the basis for the arbitrator's decision is ambiguous and notwithstanding the erroneousness of any factual findings or legal conclusions.

*Sheet Metal Workers v. Arizona Mechanical & Stainless, Inc.*, 863 F.2d 647, 653 (9th

Cir.1988) (internal citations omitted). An award is said to "draw its essence" from the contract if it is based on the contractual language and the parties' conduct. *Sunshine Mining Co. v. United Steelworkers of America*, 823 F.2d 1289, 1293 (9th Cir.1987) (citing other authority).

 However, an arbitrator's decision may be vacated if the arbitrator exceeds his authority:

[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

*Steelworkers*, 363 U.S. at 597, 80 S.Ct. at 1361.

The Agreement gave Columbia Aluminum the right "in its judgment ... to discharge for just cause." The Agreement also gave Columbia Aluminum the right to promulgate work rules. Arguably, the rule that fighting would result in "immediate and severe correction" is Columbia Aluminum's definition of just cause as including fighting.

 The Arbitrator phrased one of the two issues before him as "[W]as Hancock discharged for just cause?"[1] This articulated issue draws its essence from the Agreement. The Agreement did not prohibit an arbitrator's ruling on what was just cause; rather, it permitted Columbia Aluminum to decide initially whether it had just cause to discharge, at which point an affected employee could challenge the decision (as an "application of specific provisions of this Agreement") by grievance, and an arbitrator could decide ultimately whether Columbia's decision was correct. To hold otherwise, as Columbia Aluminum suggests, would render meaningless the grievance and collective bargaining processes.

---

1. The other issue was "[i]f not, what is the appro- priate remedy?"

■ The Arbitrator's ruling on the issue of just cause also draws its essence from the Agreement. "Immediate and severe correction" is ambiguous. The Arbitrator's interpretation that the phrase need not mean "discharge" is plausible, especially given his factual findings (*i.e.*, that Hancock acted in self-defense) and Columbia Aluminum's past practice of inconsistent discipline for fighting. The Court declines Columbia Aluminum's repeated encouragement to review the arbitrator's factual findings. The Court further dismisses as irrelevant the fact that the Arbitrator did not recite the provisions of the Agreement in his Decision. As *Stead Motors* advises, the Court cannot infer a failure to consider these provisions merely from the award's silence on the issue.

> [W]e do not require an express "finding" that a grievant can be rehabilitated.... A court cannot infer, from the mere fact that an award orders reinstatement but is silent on the subject of a grievant's rehabilitation or "amenability," that the arbitrator did not consider the question; nor can it make an independent judgment in such a case. Simply put, we look to the text of the arbitral award for an expression of an arbitrator's reasons for his decision, but we do not infer the non-existence of a particular reason merely from the award's silence on a given issue.

*Stead Motors v. Automotive Machinists Lodge 1173*, 886 F.2d 1200, 1212–13 (9th Cir. 1989) (en banc) (emphasis in original; footnotes omitted). Arbitrator Byrholdt is entitled to any degree of brevity he pleases, with no adverse implications.

### 2. The Arbitration Decision Does Not Violate Public Policy

■ Notwithstanding its limited powers of judicial review, a district court may vacate an arbitrator's decision if it violates public policy. However, the public policy must be "explicit," "well defined and dominant," and shown to exist "by reference to the laws and legal precedents" and not simply "general considerations of supposed public interests." *W.R. Grace & Co. v. Local Union 759*, 461 U.S. 757, 766, 103 S.Ct. 2177,

2183, 76 L.Ed.2d 298 (1983). Moreover, the public policy exception is "narrow":

> If a court relies on public policy to vacate an arbitral award reinstating an employee, it must be a policy that bars *reinstatement*. Courts cannot determine merely that there is a "public policy" against a particular sort of behavior in society generally and, irrespective of the findings of the arbitrator, conclude that reinstatement of an individual who engaged in that sort of conduct in the past would violate that policy....
>
> Ordinarily, a court would be hard-pressed to find a public policy barring reinstatement in a case in which an arbitrator has, expressly or by implication, determined that the employee is subject to rehabilitation and therefore not likely to commit an act which violates public policy in the future.

*Stead Motors v. Automotive Machinists Lodge 1173*, 886 F.2d 1200, 1212–13 (9th Cir. 1989) (en banc) (emphasis in original; footnotes omitted).

■ The Court recognizes the longstanding public policy outlawing assault in general. *See, e.g.*, RCW 9A.36.011, 9A.36.021 and 9A.36.031. The Court further acknowledges a growing public policy condemning workplace violence; the Department of Occupational Safety and Health recently issued citations to employers for failing to protect workers from workplace violence.[2] However, none of these authorities prohibit reinstatement of a worker involved in violence, especially not when the worker is found to act in self-defense. The Arbitrator specifically found that Hancock's reaction was reasonable under the circumstances, implicitly inferring that such conduct will not repeat itself. Thus, the Arbitrator's decision does not violate public policy.

### 3. The Arbitrator Had Authority to Order Backpay.

■ A district court may vacate an arbitration decision if it exceeds the scope of the issues submitted. *Michigan Mutual Insurance Co. v. Unigard Security Insurance*

---

**2.** Labig, *Preventing Violence in the Workplace* 5

(1995).

*Co.*, 44 F.3d 826, 830 (9th Cir.1995) (citing other authority). However, "an arbitrator's interpretation of the scope of the issue submitted to him is entitled to the same deference accorded his interpretation of the collective bargaining agreement." *Pack Concrete, Inc. v. Cunningham*, 866 F.2d 283, 285 (9th Cir.1989). Thus, courts have upheld broad interpretations of issues submitted to the arbitrator. *See, e.g., Pack,* 866 F.2d at 286 (affirming upholding of arbitration decision ruling on "discharge" when only "seniority and recall" were submitted); *Michigan Mutual,* 44 F.3d at 830 (affirming upholding of arbitration decision setting "conditions of reimbursement" when only "rescission or enforcement of the contract" was requested as relief).

Specifically regarding the submission as to relief, where the parties' *contract* does not limit the relief possible, the arbitrator is empowered to grant *any* relief reasonably fitting. *Michigan Mutual,* 44 F.3d at 830–31 (citing other authority). *See also, French v. Merrill Lynch,* 784 F.2d 902, 908 (9th Cir.1986) (upholding award of consequential damages not pleaded in complaint, where parties agreed to submit only claims set forth in complaint, but "in accordance with" rules permitting amendment of pleading).

Although the Union's grievance requested only the reinstatement of Hancock, neither the Agreement nor any subsequent party stipulation limited the authority of the arbitrator to fashion necessary relief. Thus, the Arbitrator's decision awarding backpay did not exceed its appropriate scope.

### D. CONCLUSION

Under the narrow standard of review of arbitration decisions, the arbitrator's decision must be upheld if it draws its essence from the parties' Agreement, comports with public policy, and does not exceed the scope of issues submitted. The Arbitration Decision here complies with these principles, and so must be upheld.

**IT IS HEREBY ORDERED:**

1. Plaintiff's Motion for Summary Judgment is DENIED.

2. Defendant's Motion for Summary Judgment is GRANTED.

3. Plaintiff's complaint is DISMISSED WITH PREJUDICE.

4. Defendant is AWARDED its costs. Each party shall bear its own fees.

IT IS SO ORDERED.