# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| City of Philadelphia | : | |
| | : | |
| v. | : | No. 939 C.D. 2017 |
| | : | Argued: November 15, 2018 |
| AFSCME District Council 47, | : | |
| Local 2187, | : | |
| Appellant | : | |

BEFORE: HONORABLE RENÉE COHN JUBELIRER, Judge
                HONORABLE ANNE E. COVEY, Judge (P)
                HONORABLE CHRISTINE FIZZANO CANNON, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION BY
JUDGE COHN JUBELIRER                  FILED: February 7, 2019

AFSCME District Council 47, Local 2187 (AFSCME) appeals from an Order of the Court of Common Pleas of Philadelphia County (common pleas), dated June 21, 2017, which granted the City of Philadelphia's (the City) Motion to Vacate an Arbitration Award. The Arbitrator found that the City violated its Civil Service Regulations (the Regulations) and the parties' Collective Bargaining Agreement (CBA) when it placed the grievant, Vanessa Wright, upon her promotion, at Pay Range 17, Step 1 ($41,840). The Arbitrator ordered that Wright's salary be placed "at least one step higher than what she was actually earning prior to her promotion," but retained "jurisdiction for the purpose of resolving any disputes over the implementation of this remedy." (Arbitration

Opinion and Award (Arbitration Award) at 14-15.) Common pleas vacated the Arbitration Award but, in its subsequent opinion issued pursuant to Rule 1925(a) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P 1925(a), concluded that it erred in doing so as the City prematurely sought judicial review of the Arbitration Award and, therefore, recommended that we remand the matter to the Arbitrator. We agree with common pleas that the City prematurely sought judicial review and thus vacate common pleas' Order and remand for further proceedings.

## I. Factual and Procedural Background

### A. Wright's Employment and Pay History with the City

The facts, which are largely undisputed, are as follows. In 1994, the City, through its Department of Human Services (DHS), hired Wright to work "in the Local Area Network Unit of the Division of Administration and Management." (Arbitration Award at 4.) Beginning in December 2007, while Wright was employed in the job classification of a Computer User Support Specialist (CUSS), DHS temporarily promoted her to Network Support Specialist (NSS), which is in a higher job classification than the position of CUSS. The temporary promotion lasted for six months, the maximum amount of time permitted by the Regulations,[1]

---

[1] Section 12.05 of the Regulations provide,

**TEMPORARY PROMOTIONS**. In the absence of an appropriate departmental promotional eligible list, a temporary appointment without examination to fill a vacancy may be authorized by the Director, upon the written request of an appointing authority. The appointing authority may request a temporary promotion for any employee with permanent Civil Service status whom the appointing authority deems qualified to perform the work of the position. All such temporary promotions shall continue for no more than a period of six (6) months. An employee may be compensated in temporary promotions for a maximum of six months in a twelve month period. A temporary promotion shall

**(Footnote continued on next page…)**

at which point Wright was returned to the CUSS position. (*Id.* at 1, 4.) Every year between 2007 and 2012, Wright was temporarily promoted to NSS for six months and then returned to CUSS. (*Id.* at 5.) During these annual six-month temporary promotions to NSS, Wright received a higher base salary, with the City paying her at **Pay Range 17, Step 2** (**$43,305**). (*Id.* at 4-5.) Each year when the six-month temporary promotion period ended, Wright continued to work on NSS assignments. The extent to which Wright continued performing NSS duties during these time periods is disputed. However, the parties do not dispute that, when she was not temporarily promoted to NSS, Wright received extra pay on top of her base salary as a CUSS when she worked for more than two hours on assignments classified as NSS assignments. This is known as pay for "out-of-class" assignments.[2] (CBA § 14.A., Reproduced Record (R.R.) at 66a.)

In June 2014, Wright was permanently promoted to NSS. At that time, she had been classified as a CUSS, with a base salary at **Pay Range 14, Step 4** (**$39,657**), which was the top step for this class. Upon being permanently

---

**(continued…)**

> not continue for more than thirty (30) days after the Director has published a departmental promotional eligible list for the class.

Phila. Civ. Serv. Reg. 12.05, available at https://www.phila.gov/personnel/webregs/reg12.htm (last visited January 31, 2019); *see also* (R.R. at 31a.)

[2] Section 14.A. of the CBA provides,

> [W]hen any Civil Service employee, with the approval of the appropriate department head or his/her deputy, is assigned to duties appropriate to a higher class or position than that in which the employee is employed, he/she shall be paid after the first two (2) hours of such work in any work day at the rate of the higher class for all hours worked in the higher class until the assignment is terminated.

(CBA § 14.A., Reproduced Record (R.R.) at 66a.)

promoted to NSS, the City placed Wright at **Pay Range 17, Step 1 ($41,840)**. The City based its placement on Section 6.092 of the Regulations and Section 13.B. of the parties' CBA,[3] which govern at which pay step a promoted employee must be placed.[4] Section 6.092 of the Regulations provides,

> When an employee is promoted from a position in one class to a position in another class having a higher pay range, the employee will be paid at the pay step in the higher range which will provide an increase not less than would be provided by an upward adjustment of one pay step in the lower pay range or, if none would so provide, at the highest pay step in the higher range. If the employee is paid at the top step in the pay range of the class with the lower pay range, the increase will be an amount not less than the difference between the top two steps in the lower pay range.

Phila. Civ. Serv. Reg. 6.092, available at https://www.phila.gov/personnel/webregs /reg06.htm (last visited January 31, 2019); (R.R. at 31a.) Section 13.B. of the parties' CBA contains a similar provision:

> When an employee is promoted from a position in one class to a position in another class having a higher pay range, the employee will be paid at the pay step in the higher range which will provide for him/her an increase in amount not less than would be provided by an upward adjustment of one pay step in the lower pay range or, if none would so provide, at the highest pay step in the higher range.

(CBA § 13.B., R.R. at 66a.)

---

[3] While employed as a CUSS, Wright was part of a different union, AFSCME District Council 33, and, thus, her employment was governed by the City's CBA with District Council 33. Once promoted, Wright became part of AFSCME District Council 47 and was governed by the CBA at issue.

[4] The Regulations are incorporated into the CBA.

4

**B. Grievance Proceedings**

AFSCME filed a grievance, claiming that, upon Wright's permanent promotion to NSS, the City should have paid her at **Pay Range 17, Step 4**, based on the amount of compensation she was actually earning at the time of her promotion for work done as an NSS, and not based on the "piece of paper" listing her salary as a CUSS. (Arbitration Award at 2, 9 (quoting Hr'g Tr., March 6, 2017, at 104, R.R. at 190a).) AFSCME claimed that Wright was earning more prior to her promotion than after her promotion. The grievance proceeded to a hearing before the Arbitrator, with the parties stipulating to the following question for determination:

> Pursuant to the [CBA] and City Civil Service Regulations, did the City violate the parties' [CBA] when it placed the Grievant, Vanessa Wright, at Step 1, after her promotion to the position of [NSS] in 2014, rather than Step 4? **If so, what shall be the remedy**?

(*Id.* at 2 (quoting Hr'g Tr., March 6, 2017, at 7-8, R.R. at 116a-17a) (emphasis added).)

At the arbitration hearing, as relevant here, AFSCME argued that in determining the proper step upon Wright's promotion, the City had to consider what Wright was actually earning for the seven years she was performing the duties and being paid as an NSS, and not just the base salary she was being paid as a CUSS.[5] This would include the income Wright was paid when temporarily

---

[5] AFSCME also argued that Wright was entitled to a credit under Section 6.0992.D. of the Regulations for the time she worked as an NSS while temporarily promoted because her temporary promotion was "followed immediately by" her permanent promotion to NSS. Phila. Civ. Serv. Reg. 6.0992.D., available at https://www.phila.gov/personnel/webregs/reg06.htm (last visited January 31, 2019). The Arbitrator rejected this argument, and it is not currently before us.

5

promoted to NSS and for work on out-of-class assignments. Wright and a staff representative for AFSCME (Staff Representative) testified that Wright received retroactive pay for seven years, from 2007 to 2014, because when her six-month temporary promotions to NSS expired and she was restored to CUSS, she was still doing NSS work during those years. As proof, Wright offered a "retroactive pay sheet" showing that she received retroactive pay from September 23, 2007, through April 20, 2008. (Hr'g Tr., March 6, 2017, at 47-48, R.R. at 156a-57a, 211a.) Wright stated that while the retroactive pay sheet was "just a sample," in that it covered only seven months and not the seven years she worked and was compensated as an NSS, she reiterated that she received retroactive pay from 2007 to 2014. (Hr'g Tr., March 6, 2017, at 47-48, R.R. at 156a-57a.) The Arbitrator asked if the City's Counsel would stipulate that Wright was paid for the entire seven years as an NSS, but the City refused to so stipulate. Staff Representative testified that even the City's Personnel Department concluded, after evaluating the work Wright was doing, that she was doing the work of an NSS. Staff Representative further testified that Wright's circumstances of being temporarily promoted to an NSS and then restored to a CUSS but continuing to perform the work of an NSS was "a very unusual and unique situation that" she had "not seen go on for this long." (Hr'g Tr., March 6, 2017, at 27, R.R. at 136a.)

The City took the position that it had placed Wright at the correct step in accordance with Section 6.092 of the Regulations and Section 13.B. of the parties' CBA. (Arbitration Award at 9.) The City, through its Deputy Director of the Office of Human Resources (Deputy Director), maintained that an employee's pay during temporary promotions or pay for out-of-class assignments, whether paid retroactively or otherwise, is not considered when determining the proper step at

6

which a promoted employee should be paid. Rather, what is considered is the employee's classified pay range and pay step. Deputy Director testified that "when a person is promoted to a new title or a higher title and a higher pay range," Section 6.092 of the Regulations require "they have to make at least equal to the amount of a one-pay step increase in their current title." (Hr'g Tr., March 6, 2017, at 64, R.R. at 173a.) Based on those considerations, Deputy Director explained the placement of Wright at Pay Range 17, Step 1. At the time of her promotion, Deputy Director testified, Wright was at Pay Range 14, Step 4, which was the top pay step for her position as a CUSS. Because Wright was at the top pay step, in order to comply with Section 13.B. of the CBA, she had to receive an "amount not less than the difference between the top two steps in" Pay Range 14. (CBA § 13.B., R.R. at 66a.) Therefore, Deputy Director explained, a "dummy step," or Step 5, was created whereby the difference between the top two pay steps in Pay Range 14, Step 3 and Step 4, was added to her top pay step. (Hr'g Tr., March 6, 2017, at 66, R.R. at 175a.) In other words, the difference between Step 3 ($38,472) and Step 4 ($39,657) or $1185, was added to $39,657 for a total of $40,842. Wright, according to Deputy Director, had to make at least $40,842. Since $41,840 is more than $40,842, it was determined that Wright was to be paid, as an NSS, at Pay Range 17, Step 1.

## C.    Arbitration Award

The Arbitrator issued an Opinion and Award, finding that since 2007, the City had paid Wright, "retroactively or otherwise[,] as an NSS" while she was a CUSS, "based on her being compensated with out-of-class pay for continuously performing the duties and responsibilities of an NSS from 2007 through the time of

7

her promotion."[6]  (Arbitration Award at 12.)  Stated otherwise, the City had "**confirmed** . . . that while officially working in the CUSS class prior to her promotion[, Wright]'s duties and responsibilities were commensurate with those of someone working in the NSS class."  (*Id.* (emphasis in original).)  The Arbitrator found these circumstances "unique."  (*Id.*)  Inasmuch as Wright "*de facto* worked as an NSS for close to seven years, and the City having *de facto* paid her as such," the Arbitrator concluded that the City should not have regarded Wright "as a full-time CUSS when it promoted her to the NSS class," and "the City failed to properly compensate her when it placed her at Step 1 of the NSS Pay Range upon her promotion."  (*Id.* at 12-13.)  The Arbitrator acknowledged the testimony of Deputy Director that the City does not consider additional pay received while temporarily promoted or while working on out-of-class assignments when determining an employee's initial salary upon promotion.  The Arbitrator concluded that, while that generally may be the case, given the "unique set of facts" of this case, it was improper to do so here.  (*Id.* at 13.)  The Arbitrator noted, citing Deputy Director's testimony, that the purpose behind the City's salary determination is to ensure that a person who is promoted receives a pay increase, but Wright did not receive a pay increase because she was receiving a greater salary for nearly seven years when she was temporarily promoted and doing out-of-class assignments than when she was permanently promoted.  In short, the Arbitrator concluded that the City violated the CBA and the Regulations "when it failed to consider the total compensation being earned by [Wright] (for performing

---

[6] The Arbitration Award appears to use the term "out-of-class" pay to refer to both the pay Wright received while temporarily promoted and for working on out-of-class assignments.

[NSS] duties prior to her promotion) at the time it promoted her to the [NSS] class in June 2014." (*Id.* at 14-15.)

In a footnote, the Arbitrator noted that the record did "not reveal the precise amounts of out-of-class pay [Wright] ha[d] received for performing her NSS duties while still holding the CUSS job title." (*Id.* at 14 n.1.) However, the Arbitrator found that Wright's "failure to produce such an accounting [was not] a basis to deny her relief, inasmuch as she credibly testified regarding her receipt of out-of-class pay up through the time of her promotion and the City (which [wa]s in the best position to provide such records) failed to rebut such testimony." (*Id.*) Given the lack of evidence as to what Wright was actually earning prior to her promotion, the Arbitrator ordered the City to prospectively adjust Wright's salary, placing her "at least one step higher than what she was earning prior to her promotion ($39,657 as a [CUSS], plus any out-of-class pay she was receiving for performing her NSS duties at the time of her promotion)." (*Id.* at 15.) The Arbitrator further ordered that the City was to compensate Wright in this "manner retroactive to the date of her promotion." (*Id.*) The Arbitrator "**retain[ed] jurisdiction for the purpose of resolving any disputes over the implementation of this remedy**." (*Id.* (emphasis added).)

### D. Proceedings in Common Pleas

The City then filed its Motion to Vacate the Arbitration Award (Motion) with common pleas. The City argued that the Arbitration Award should be vacated because it "was not a rational interpretation of the [CBA]." (*Id.* at 14a, 23a.) The CBA and the Regulations, the City contended, do not include pay received while temporarily promoted or for work on out-of-class assignments in calculating the

9

appropriate salary step of a promoted employee. In making that calculation, the City argued, it considers only the employee's pay range and step, that is, the employee's base salary. Therefore, according to the City, the Arbitrator's conclusion that Wright was a *de facto* NSS, and her base salary was not that of a CUSS but an NSS, did not rationally flow from the CBA. The City thus asserted that it placed Wright at the correct pay step, and the Arbitration Award should be vacated.

AFSCME, opposing the Motion, argued that the Arbitration Award drew its essence from the CBA and, therefore, the Motion should be denied and the Arbitration Award confirmed. AFSCME argued that the Arbitrator rationally reasoned that the intent of Section 13.B. of the CBA and Section 6.092 of the Regulations is to afford a promoted employee an increase in salary. The record showed, AFSCME argued, that Wright was performing the duties of an NSS up until the time of her promotion and, importantly, in performing those duties, the City paid Wright as an NSS, at $43,305. However, AFSCME argued, Wright did not receive an increase in salary but a reduction, going from $43,305 to $41,840. AFSCME contended that the City was seeking to go beyond the narrow scope and standard of review and have common pleas interpret the CBA so as not to include the consideration of pay received while temporarily promoted and for work on out-of-class assignments in determining the correct salary step of a promoted employee.

During oral argument on the Motion, in the course of questioning the attorneys, common pleas asked at what pay step had the Arbitrator placed Wright. Counsel for AFSCME answered that it still needed to be determined. AFSCME Counsel stated that because he did not have the City's records, he did not know at

10

what pay step Wright should be placed, whether "she should be at Step 2, 3 or 4," and that this was the reason "why the [A]rbitrator retained jurisdiction for purposes of the remedy." (Hr'g Tr., June 21, 2017, at 16, R.R. at 262a.) Common pleas then asked **if the Motion was premature**, and AFSCME Counsel answered that if the question was how much the City had to compensate Wright, then the Motion was premature, and Counsel noted again that **the Arbitrator had retained jurisdiction** to decide that question.

Following oral argument, common pleas granted the Motion and vacated the Arbitration Award "to the extent [the Arbitration Award] requires the City to compensate or pay [Wright] for 'any out-of-class pay she was receiving for performing her NSS duties at the time of her promotion.'" (Common Pleas Order (quoting Arbitration Award at 15).) Common pleas explained its rationale on the record following oral argument, stating it interpreted the Arbitration Award as awarding Wright an increase in pay step **plus** out-of-class pay. However, common pleas concluded, there was no basis in either the CBA or the Regulations for the Arbitrator "to provide any increase in pay other than the one-step increase even in cases where there is prolonged use of temporary positions." (Hr'g Tr., June 21, 2017, at 26-27, R.R. at 272a-73a.) Therefore, common pleas concluded, the Arbitration Award did not logically flow from the CBA.

AFSCME filed its appeal, and common pleas directed AFSCME to file a Concise Statement of Errors Complained of on Appeal in accordance with Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 1925(b). AFSCME did so, asserting, *inter alia*, that common pleas "should have denied the [Motion] as premature or remanded the matter to the Arbitrator" because the Arbitrator had retained jurisdiction over the remedy to be implemented. (Rule

11

1925(b) Statement at 2, R.R. at 278a.) Alternatively, AFSCME argued that common pleas had misinterpreted the Arbitration Award and that common pleas erred in its application of the essence test.

In common pleas' responsive opinion (1925(a) Opinion), common pleas stated that this Court should remand the matter to the Arbitrator because the City's Motion was premature. Common pleas characterized the City's Motion as one challenging the implementation of the Arbitration Award. (1925(a) Opinion at 4.) Common pleas noted that the Arbitrator did not make a finding of fact as to Wright's actual earnings prior to her promotion because, as the Arbitrator stated in a footnote, the record did not contain such proof and, therefore, the Arbitrator did not specifically state at which pay step Wright should be placed. (*Id.* at 2, 4-5.) However, common pleas also noted that the Arbitrator provided guidance to the parties on how to determine the appropriate pay step for Wright, including the calculation of the amount of out-of-class pay Wright received, while the Arbitrator specifically "'retain[ed] jurisdiction for the purpose of resolving any disputes over the implementation of this remedy.'" (*Id.* at 4-5 (quoting Arbitration Award at 15).) Common pleas explained that to allow the City to seek judicial review now, prior to the Arbitrator's resolution of the dispute regarding the implementation of the remedy, including whether further factual findings were necessary, "would negate the benefit of arbitration." (*Id.* at 5.) Common pleas noted that the parties, on remand, would be able to submit evidence, which would likely include the precise amounts of pay Wright received for performing work as an NSS but while holding the title of a CUSS, so that the dispute over the implementation of the remedy could be resolved. (*Id.*). Once the Arbitrator makes additional findings of fact and enters a final determination of Wright's claim, common pleas stated, the

12

City could seek judicial review. (*Id.*) Given the foregoing, common pleas concluded, the City should have let the Arbitrator settle any disputes regarding implementation of the remedy, rather than prematurely filing its Motion. (*Id.* at 2-3.) AFSCME's appeal is now ready for disposition by this Court.[7]

## II. Discussion
### A. Arguments on Appeal

On appeal, AFSCME argues[8] that the City prematurely invoked judicial review and, thus, common pleas erred when it reached the merits of the City's Motion, rather than dismissing it as premature. At oral argument on the Motion, AFSCME contends, it became clear to common pleas that the City was focused on the remedy. At that point, with the Arbitrator having retained jurisdiction over the implementation of the remedy, common pleas should have denied the Motion rather than encroaching on the Arbitrator's authority. To common pleas' credit, AFSCME notes, it recognized its errors, as stated in its Rule 1925(a) Opinion, but by that point it was too late.[9] Alternatively, AFSCME asserts that common pleas

---

[7] The standard of review of a grievance arbitration is the "essence test." This is a two-part analysis that requires the Court:

> [f]irst, . . . [to] determine if the issue as properly defined is within the terms of the [CBA]. Second, if the issue is embraced by the agreement, and thus, appropriately before the arbitrator, the arbitrator's award will be upheld if the arbitrator's interpretation can rationally be derived from the [CBA].

*State Sys. of Higher Educ. (Cheyney Univ.) v. State Coll. & Univ. Prof'l Ass'n (PSEA-NEA)*, 743 A.2d 405, 413 (Pa. 1999).

[8] We have reordered AFSCME's arguments for purposes of our review.

[9] AFSCME filed an Application to Remand (Application) with this Court, seeking entry of an order consistent with common pleas' 1925(a) Opinion. By order dated December 21, 2017, this Court (Quigley, S.J.), denied the Application as it was apparent that the Application sought
**(Footnote continued on next page…)**

13

erred in vacating the Arbitration Award because it draws its essence from the CBA. Highlighting the narrow standard of review of an arbitration award, AFSCME argues that, as the Arbitrator determined and supported by Deputy Director's testimony, the stated intent behind Section 13.B. of the CBA is to provide an employee, upon her promotion, an increase in salary. Since Wright did not receive an increase in pay upon her promotion, but a reduction because the City did not take into account Wright's earnings during her temporary promotion and for work on out-of-class assignments, AFSCME argues the Arbitrator correctly sustained the grievance and ordered the City to adjust Wright's salary step calculation. Therefore, AFSCME concludes, this Court should remand the matter for the Arbitrator to implement the appropriate remedy or, alternatively, should confirm the Arbitration Award.

The City argues that its Motion was not premature since it challenged whether it had violated the CBA at all, and not implementation of the remedy. In other words, "[t]here is no need to implement a remedy that should not have existed in the first place." (The City's Brief (Br.) at 15.) Next, the City argues that the Arbitration Award did not draw its essence from the CBA. This is because "nothing in the CBA, Civil Service Regulations, or past practice requires the City to consider 'out-of-class' hourly payments when an employee receives a permanent promotion," and the Arbitrator could not point to anything that required the City to do so. (*Id.* at 17.) Incidental hourly payments made under the CBA, including pay for work on out-of-class assignments or overtime, do not affect base

_____

(continued…)
to have a single judge make a decision on the merits, which could not occur without a quorum of judges.

salary, the City argues. Rather, these payments merely "reflect an increase in an employee's hourly rate for the time periods in which the employee is actually working out-of-class or overtime." (*Id.* at 17-18.) The only things the CBA and the Regulations require the City to consider, it contends, is the pay range and step "for an employee's job classification when determining her base salary upon promotion." (*Id.* at 19.) Finally, the City argues, the Arbitrator did not have the authority to create his own form of *de facto* promotion, as such a promotion does not draw its essence from the CBA and was not permitted by the Regulations. Accordingly, the City asks this Court to affirm the Order of common pleas vacating the Arbitration Award.

## B. Analysis

Before we can reach the merits, we must first address whether the City prematurely invoked judicial review. Under the Public Employe Relations Act (PERA),[10] "[a]rbitration of disputes or grievances arising out of the interpretation of the provisions of a [CBA] is mandatory," with "the final step" in the procedure adopted for resolving disputes or grievances being "a binding decision by an arbitrator." Section 903 of PERA, 43 P.S. § 1101.903. The parties' CBA memorializes Section 903, providing for, as a final step in the grievance procedure, arbitration, which "shall be final and binding." (CBA § 7.A., R.R. at 58a, 60a.) Where, as here, "arbitration is mandatory, judicial involvement **must await completion of that process**." *Montgomery Cty. Intermediate Unit v. Montgomery Cty. Intermediate Unit Educ. Ass'n*, 797 A.2d 432, 434 (Pa. Cmwlth. 2002) (emphasis added).

---

[10] Act of July 23, 1970, P.L. 563, *as amended*, 43 P.S. §§ 1101.101-1101.2301.

15

In *Montgomery County*, the employers terminated several employees, and the employees sought to grieve their terminations under their CBA. *Id.* at 433. The employers disagreed that the employees' terminations were subject to arbitration, asserting that the terminations were governed by the Public School Code of 1949 (School Code).[11] The matter proceeded to arbitration with the parties agreeing to bifurcate the process, submitting the issue of arbitrability to the arbitrator first, although the parties could not agree as to what would happen next if the arbitrator concluded that the matter was arbitrable. *Id.* The arbitrator ultimately found that the matter was arbitrable. *Id.* The employers petitioned common pleas for review, and common pleas vacated the award, stayed any further arbitration proceedings, and "directed the parties to proceed through the statutory provisions of the School Code." *Id.* The employees, through their associations, appealed to this Court, and we vacated common pleas' order and remanded the matter to the arbitrator to render a decision on the merits. *Id.* at 434. In doing so, we concluded that the arbitrator's determination that the matter was arbitrable was not immediately appealable. *Id.* Rather, since arbitration of this grievance was mandatory, judicial involvement had to "await completion of that process." *Id.* We explained that the reason for requiring completion of the arbitration process was to "increase[] the likelihood of more efficient, uninterrupted arbitration and, hopefully, resolution beyond the courthouse walls." *Id.*

In *Fastuca v. L.W. Molnar & Associates*, 10 A.3d 1230, 1241 (Pa. 2011), while not involving the PERA but the interpretation of the meaning of "award" contained in Section 7341 of the Uniform Arbitration Act, 42 Pa. C.S. § 7341,[12] our

---

[11] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1-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.
[12] Section 7341 provides as follows,
**(Footnote continued on next page…)**

Supreme Court concluded that in order for an arbitrator's decision to constitute an award, it had to "finally resolve[] all disputed matters submitted to him or her by the parties and must, therefore, include the arbitrator's decision on all outstanding legal issues, and all necessary factual determinations." *Fastuca*, 10 A.3d at 1241. In reaching this conclusion, our Supreme Court was guided by its decision in *Great American Insurance Company v. American Arbitration Association*, 260 A.2d 769, 770 (Pa. 1970), where, after an arbitrator determined that coverage under an uninsured motorist provision existed for a passenger injured in a taxicab, the insurer filed a complaint in equity seeking to enjoin the arbitrator from proceeding to a hearing on damages. Our Supreme Court in *Great American* stated that it was improper for the insurer to seek review of the arbitrator's decision by filing a complaint in equity. *Id.* at 771. The arbitrator's decision, the Supreme Court noted, had not resulted in an award, as "the damage stage of the proceedings had not yet been reached." *Id.* The arbitrator could have concluded, the Supreme Court stated, "that, even though coverage existed, no damages would be awarded, or the award would be satisfactory to the insurer." *Id.* Stated differently, "the insurer was attempting to gain interlocutory review by the equity route rather than await a final award and then petition to vacate it." *Id.* Based on *Great American*,

_____

**(continued…)**

The award of an arbitrator in a nonjudicial arbitration which is not subject to Subchapter A (relating to statutory arbitration) or a similar statute regulating nonjudicial arbitration proceedings is binding and may not be vacated or modified unless it is clearly shown that a party was denied a hearing or that fraud, misconduct, corruption or other irregularity caused the rendition of an unjust, inequitable or unconscionable award.

42 Pa. C.S. § 7341.

17

and the common and accepted meaning of "award," as "'[a] final judgment or decision,'" the Supreme Court concluded in *Fastuca* that since the matter had been bifurcated into two phases – one surrounding the dissolution of a partnership and one to determine the value of one partner's share in the partnership – the trial court erred when it terminated the arbitration after the first phase. *Fastuca*, 10 A.3d at 1235-36, 1240-41 (quoting Black's Law Dictionary 147 (8th ed. 2004)). The Supreme Court explained that this was because the arbitrator's decision "did not resolve all outstanding issues arising from the dispute" between the parties. *Id.* at 1240. "[F]inality in disposing of all the matters submitted by the parties to the arbitrator for his or her decision," the Supreme Court stated, was "the *sine qua non* of an award." *Id.*

Under federal law, which we may follow "due to the similarity between the federal labor law and our own laws dealing with labor relations," *Office of Administration v. Pennsylvania Labor Relations Board*, 916 A.2d 541, 550 (Pa. 2007), Section 301(b) of the Labor Management Relations Act, 1947, 29 U.S.C. § 185(b),[13] as interpreted by the United States Supreme Court, requires that an arbitrator's award in a labor dispute be "final and binding" before a court may

---

[13] Section 301(b) of the Labor Management Relations Act, 1947 provides,

Any labor organization which represents employees in an industry affecting commerce as defined in this chapter and any employer whose activities affect commerce as defined in this chapter shall be bound by the acts of its agents. Any such labor organization may sue or be sued as an entity and in behalf of the employees whom it represents in the courts of the United States. Any money judgment against a labor organization in a district court of the United States shall be enforceable only against the organization as an entity and against its assets, and shall not be enforceable against any individual member or his assets.

29 U.S.C. § 185(b).

18

vacate or enforce the award, *Millmen Local 550, United Brotherhood of Carpenters and Joiners of America, AFL-CIO v. Wells Exterior Trim*, 828 F.2d 1373, 1375 (9th Cir. 1987) (citing *General Drivers, Warehousemen and Helpers, Local Union No. 89 v. Riss and Co.*, 372 U.S. 517, 519 (1963)). This is known as "the complete arbitration rule." *Union Switch & Signal Div. Am. Standard Inc. v. United Elec., Radio & Mach. Workers of Am., Local 610*, 900 F.2d 608, 611 (3d Cir. 1990) (internal quotation marks omitted). Under the complete arbitration rule, an award is not considered final until the arbitrator has determined every issue submitted by the parties. *Millmen Local 550*, 828 F.2d at 1376. Thus, an award is not considered final and binding if the arbitrator determines liability, but leaves the question of what remedy should follow open and retains jurisdiction to resolve any subsequent remedial disputes. *Union Switch*, 900 F.2d at 611.

In *Union Switch*, the arbitrator issued a decision on the question of liability, finding that the employer had violated the CBA in terminating certain employees. *Id.* at 609. The arbitrator, while ordering that the employees be retroactively reinstated and "made whole," **retained jurisdiction** "to make final rulings on any remedial disputes that the parties [we]re unable to resolve after full discussion." *Id.* At this point, the employer filed a complaint in federal district court to have the arbitrator's award vacated, while the employees, through their union, counterclaimed for enforcement of the award. *Id.* The parties filed competing motions for summary judgment, and the district court granted summary judgment to the union. *Id.* No appeal was taken. The parties then negotiated as to what would make the employees "whole," but could not come to an agreement. *Id.* at 610. The union requested that the employer submit the matter back to the original arbitrator, but the employer refused, arguing that the arbitrator had no jurisdiction,

19

and that this was a separate grievance that had to go before a new arbitrator. *Id.* The union then filed a pleading in federal district court requesting that the matter be remanded to the original arbitrator, which the district court denied, and the union appealed. On appeal, the United States Court of Appeals for the Third Circuit criticized the district court's exercise of jurisdiction over the original complaint and counterclaim as it did, calling it "serious error" to entertain the cross-motions to vacate and enforce. *Id.* Instead, the Third Circuit stated, the district court should have applied "the complete arbitration rule," consistent with the "teachings of [the Third Circuit] and . . . every other Court of Appeals." *Id.* at 610-11. The Third Circuit emphasized that, as a result of the district court's failure to apply the complete arbitration rule, "fragmented litigation" had ensued, with the matter "occup[ying] a federal magistrate, a federal district court judge, and . . . a panel of the Court of Appeals," which still was "not in a position to resolve the entire dispute and put an end to this controversy." *Id.* at 611 (internal quotation marks omitted). In contrast, the Third Circuit explained that had the district court dismissed the original complaint and counterclaim, "and the parties were still unable to agree upon a remedy, the arbitration would have continued through to a determination of the appropriate make whole relief and only then, if at all, would the dispute have been presented in the district court," at which point "the district court would [have] be[en] in a position to resolve **all** of the issues presented by this nexus of operative facts." *Id.* (emphasis in original). Although the Third Circuit concluded that the complete arbitration rule is not a jurisdictional rule but a prudential one and, therefore, the district court had jurisdiction, the Third Circuit stated that its opinion "should alert the bench and bar to the necessity of an arbitration to be complete before a section 301 action is entertained so that a

20

premature action will be discouraged or, if brought, will be met with a motion to dismiss." *Id.* at 611-14.

The consistent theme that runs through these cases is that there are important prudential reasons for requiring that the arbitration resolve all outstanding issues before a party may seek judicial review: it encourages efficient resolution of the matter rather than piecemeal litigation through an interlocutory appeal, which is sometimes undertaken solely to delay resolution of the dispute; it avoids unnecessary time and expense spent seeking judicial review that may only result in a remand to the arbitrator; it evades relitigation of the same dispute; and it may even result in a resolution without judicial interference. *See Fastuca*, 10 A.3d at 1240-41; *Montgomery Cty.*, 797 A.2d at 434; *Union Switch*, 900 F.2d at 611-614; *see also W. Pottsgrove Twp. v. W. Pottsgrove Police Officers' Ass'n*, 791 A.2d 452, 456 n.13 (Pa. Cmwlth. 2002) (stating "that the arbitrator's retention of jurisdiction promotes judicial economy by reducing delay in the final resolution of the matter, avoiding unnecessary time and expense and evading relitigation of essentially the same dispute").

Given the foregoing, we conclude that the City prematurely invoked judicial review when it filed its Motion. The Arbitrator did not resolve all issues presented. Indeed, one question submitted to the Arbitrator was that if a violation of the CBA and Regulations was found, "what shall be the remedy?" (Arbitration Award at 2.) Because there was neither proof nor agreement of "the precise amounts of out-of-class pay [Wright] ha[d] received for performing her NSS duties while still holding the CUSS job title," (*id.* at 14 n.1), the Arbitrator retained jurisdiction for the purpose of implementing the remedy he ordered, namely, that the City place Wright "at least one step higher than what she was earning prior to her promotion

21

($39,657 as a [CUSS], plus any out-of-class pay she was receiving for performing her NSS duties at the time of her promotion)." (*Id.* at 14 n.1, 15.) There are factual issues regarding the amount Wright was paid for the seven years at issue, and it is unclear what the result will be. For example, the parties may have conflicting evidence as to what Wright was paid, which will require the Arbitrator to make credibility determinations and findings of fact, or the pay Wright received may have been more than $39,657 but less than $40,842, which would mean that the City placed Wright at the correct step, or, as in *Great American*, that Wright essentially had "no damages." 260 A.2d at 771; *see also Peabody Holding Co., LLC v. United Mine Workers of Am., Int'l Union, Unincorporated Ass'n*, 815 F.3d 154, 161 (4th Cir. 2016) (internal quotation marks and citation omitted) (analogizing the complete arbitration rule to the general prohibition against interlocutory appeals, which promotes efficiency because interlocutory appeals require an appellate court to consider an issue that may ultimately be rendered moot if the appealing party prevails). Thus, it would be premature to review the Arbitration Award at this stage.

While the City argues that "[t]here is no need to implement a remedy that should not have existed in the first place," (The City's Br. at 15), this does not permit the City to bypass the requirement that all issues presented to the Arbitrator be resolved before seeking judicial review of whether the Arbitrator's interpretation is rationally derived from the CBA. The City's argument, were we to follow it, would eviscerate the requirement that the arbitration be final, for in every case a party could claim that the arbitrator's determination of liability was erroneous and that, therefore, the court should intervene before damages are addressed. *See Peabody Holding Co., LLC*, 815 F.3d at 161 (rejecting the same

22

argument because "it could always be claimed that judicial review of an arbitrator's liability ruling might potentially save the parties and the arbitrator remedial time" and "could even be used to support one party's right to claim immediate recourse to court in disputes where there is no semblance of bifurcation").

## III.     Conclusion

Accordingly, we agree with common pleas that it should not have vacated the Arbitration Award because it was not yet final.  Therefore, we vacate common pleas' Order vacating the Arbitration Award and remand this matter to common pleas with the instruction to remand the matter to the Arbitrator to resolve the outstanding issue of the remedy to be implemented.


_____
**RENÉE COHN JUBELIRER**, Judge

23

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

City of Philadelphia : 
:
v. : No. 939 C.D. 2017
:
AFSCME District Council 47, :
Local 2187, :
Appellant :

# **O R D E R**

**NOW**, February 7, 2019, the Order of the Court of Common Pleas of Philadelphia County (common pleas), dated June 21, 2017, is **VACATED**.  The matter is **REMANDED** to common pleas with the instruction to **REMAND** the matter to the Arbitrator for further proceedings in accordance with this opinion.

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER,** Judge